IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FLYGRIP, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> AMAZON.COM, INC., COGHLAN FAMILY ENTERPRISES LLC, and ATX OVERSTOCK LLC <br><br> *Defendants*. | § § § § § § § § § § § § § § § § | Case No. 6:21-cv-01081-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT AMAZON.COM, INC.'S MOTION TO
SEVER AND STAY PLAINTIFF'S NEWLY ADDED CLAIMS AGAINST
COGHLAN FAMILY ENTERPRISES LLC, AND ATX OVERSTOCK LLC**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

I.  INTRODUCTION ............................................................................................................ 1

II. BACKGROUND .............................................................................................................. 2

III. THE CLAIMS AGAINST THE TWO WDTX BUSINESSES ARE PERIPHERAL
    TO THOSE AGAINST AMAZON AND SHOULD BE SEVERED ................................ 4

IV. THE SEVERED CLAIMS AGAINST THE TWO WDTX BUSINESSES SHOULD
    BE STAYED PENDING RESOLUTION OF THE CLAIMS AGAINST AMAZON .... 12

V.  CONCLUSION ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3M Co. v. Nexus Med. LLC*,
  No. 1:20-cv-00697-LY, 2020 WL 10230744 (W.D. Tex. Nov. 3, 2020) ................................... 4

*Am. Vehicular Scis. LLC v. Toyota Motor Corp.*,
  No. 6:12cv404 MHS–JDL, 2014 WL 3385149 (E.D. Tex. July 10, 2014) .............. 6, 11, 13, 14

*Anderson v. Red River Waterway Comm'n*,
  231 F.3d 211 (5th Cir. 2000) ................................................................................................... 4

*Brunet v. United Gas Pipeline Co.*,
  15 F.3d 500 (5th Cir. 1994) ..................................................................................................... 4

*Gold v. Burton Corp.*,
  949 F. Supp. 208 (S.D.N.Y. 1996) ............................................................................... 7, 8, 13

*GreatGigz Solutions, LLC v. Costco Wholesale Corp.*,
  No. 6-21-CV-00807, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022) ................................ 13, 14

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ............................................................................................... 9

*In re Nintendo of America, Inc.*,
  756 F.3d 1363 (Fed. Cir. 2009) ............................................................................................ 7, 8

*In re Samsung Electronics, Ltd.*,
  2 F.4th 1371 (Fed. Cir. 2021) .................................................................................................. 9

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ............................................................................................... 6

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010) ............................................................................................... 9

*Koh v. Microtek Intern., Inc.*,
  250 F. Supp. 2d 627 (E.D. Va. 2003) ......................................................................... 8, 12, 13

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................................... 12

*LG Elecs. Inc. v. Advance Creative Comp. Corp.*,
  131 F.Supp.2d 804 (E.D. Va. 2001) .................................................................................... 8, 11

*Liaw Su Teng v. Skaarup Shipping Corp.*,
    743 F.2d 1140 (5th Cir. 1984) .............................................................................................. 5

*MGT Gaming, Inc. v. WMS Gaming, Inc.*,
    978 F. Supp. 2d 647 (S.D. Miss. 2013) ...................................................................... 8, 11, 12

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
    No. 6:20-cv-00876-ADA, 2022 WL 958384 (W.D. Tex. March 25, 2022) ........................ 5, 8

*Oplus Technologies, Ltd. v. Sears Holding Corp.*,
    No. 11-CV-9029, 2012 WL 2400478 (N.D. Ill. June 21, 2012) ........................................... 6, 8

*Pipeline Techs. Inc. v. Telog Instruments Inc.*,
    No. CV–13–02104–PHX–SPL, 2014 WL 5241719 (D. Ariz. Oct. 15, 2014) ........................ 8

*Richmond v. Forever Gifts, Inc.*,
    No. 3:14-CV-0583-K, 2015 WL 11120883 (N.D. Tex. March 18, 2015) .................... 8, 11, 12

*Shifferaw v. Emson USA*,
    No. 2:09–CV–54–TJW–CE, 2010 WL 1064380 (E.D. Tex. March 18, 2010) ............. 4, 8, 12

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
    No. 10-C-1101, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) ............................................... 5, 8

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
    No. A.3:04-CV-2391-L, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ............................ 8, 12

**Rules**

Fed. R. Civ. P. 21 ............................................................................................................................ 4

I.      **INTRODUCTION**

Defendant Amazon.com, Inc. ("Amazon") respectfully moves to sever the claims by Plaintiff Flygrip, Inc. ("Flygrip") against Coghlan Family Enterprises LLC and ATX Overstock LLC from the claims against Amazon under Fed. R. Civ. P. 21 and the "peripheral defendant" doctrine, and to stay the severed claims against them, pending the outcome of the claims against Amazon. These parties added by Flygrip on April 11, 2022 are two smaller local businesses who are incidental to the case against Amazon because, under Flygrip's own allegations, one is a third-party seller of accused products on the Amazon.com site and one purchases accused products from Amazon. But Flygrip already accuses Amazon of infringing based on all sales by itself or by third-party sellers of accused products on the website, and if Flygrip prevails on these allegations, it could not obtain a double recovery both from Amazon and also from third-party sellers or customers. Further, these alleged activities are in no way unique to this area because there are thousands of customers of the accused products and over 150 third-party sellers of accused products spread all over the country.

What possible reason would Flygrip have to pull into this case two local businesses, when the claims against them are peripheral and secondary to its allegations against Amazon? It's simple: the two likely could not have been sued in the District of Colorado, where Amazon moved to have the claims against it transferred over three months ago. Amazon's transfer motion is based on the fact that the clearly more convenient forum for this dispute against Amazon is Colorado, where two accused product manufacturers (PopSockets and Otter), most of the witnesses and documents, and the greater local interest, are located, and where declaratory judgment actions by those manufacturers have been filed against Flygrip to clear their products. In contrast, this District is home to no parties, no known witnesses, no sources of proof, and no real local interest in the

1

dispute. Facing all of that, Flygrip appears to have chosen to add two local businesses whose addition it hopes might block transfer at the initial step that asks whether the entire action "might have been brought" in the destination venue.

The court should not allow Flygrip to manipulate the transfer analysis by turning local businesses in this District into pawns. While the case against Amazon is already peripheral to the true dispute between Flygrip and the accused product manufacturers, these local businesses are even more peripheral. This Court and other courts have rejected such attempts at venue manipulation by severing the peripheral defendants and staying the cases against them and allowing transfer of the remainder of the case to the rightful, more convenient, location. Forcing small local businesses to hire counsel, make appearances and defend themselves against nuisance claims for the purpose of manipulating venue should be discouraged.

## II.   BACKGROUND

Despite suing in the Western District of Texas ("WDTX"), Flygrip has no apparent business ties to Texas. Flygrip is a New York corporation located in Farmingdale, NY. (ECF No. 1, ¶ 1; ECF No. 14-7.) Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. (ECF No. 1, ¶ 2.)

Flygrip filed this lawsuit against Amazon on October 18, 2021. (ECF No. 1.) Flygrip's Complaint alleged that Amazon has infringed by, for example, "making, using, offering to sell, selling and importing products that infringe" and "advertising and promoting the use of" such products. (*Id.*, ¶ 5, 23.) The initial Complaint alleged infringement based on accused products manufactured by four companies: PopSockets, Otter, Nite Ize, and Quest. (ECF No. 1, ¶ 14.) Flygrip now only accuses products of PopSockets, Otter, and Quest. (ECF No. 22, ¶ 18.) Of these three accused product manufacturers, PopSockets and Otter are located in Colorado, while Quest

2

(like Flygrip) is located in New York. (ECF No. 14-4, ¶¶ 3, 6-7; ECF No. 14-5, ¶¶ 3, 6; ECF No. 14-16.)

On the Amazon.com website, some of the three accused products are sold by Amazon itself and sold by third-party sellers who use the Amazon.com website as a retail platform for their sales, and some are sold only by third-party sellers. For example, the accused PopSockets product below (left) are "sold by" both Amazon and several third-party sellers on Amazon.com, while other accused products, such as the SpinPop devices below (right) manufactured by Quest, are sold on Amazon.com only by third-party sellers:




(Carraway Decl., Ex. 3-4.)

3

Amazon moved on January 10, 2022 to transfer this case to the District of Colorado under 28 U.S.C. § 1404(a). (ECF No. 14.) Flygrip and Amazon then engaged in several months of venue discovery, which postponed the deadline for Flygrip's opposition to the motion. (ECF No. 15.)[1]

On April 11, 2022 (the deadline for venue discovery), just two weeks before its opposition to the transfer motion was due, Flygrip filed an Amended Complaint, which dropped one of the two asserted patents and added two defendants located in this District. (ECF No. 22.) One, Coghlan Family Enterprises LLC ("CFE"), is alleged to be a Texas LLC located in San Antonio. (*Id.*, ¶ 3.) The other, ATX Overstock LLC ("ATX") is alleged to be a Texas LLC located in Leander, Texas. (*Id.*, ¶ 4.) Flygrip asserts that these two local businesses infringe because one is a third-party seller on the Amazon.com website and one is an Amazon customer: "CFE is a third-party seller of one or more of the Exemplary Products on the Amazon.com website and ATX purchases overstock and surplus merchandise from Amazon.com." (*Id.*, ¶ 25.)

### III.   THE CLAIMS AGAINST THE TWO WDTX BUSINESSES ARE PERIPHERAL TO THOSE AGAINST AMAZON AND SHOULD BE SEVERED

Rule 21 provides that the "court may also sever any claim against a party." Fed. R. Civ. P. 21. "[D]istrict courts have broad discretion to sever claims under Rule 21." *3M Co. v. Nexus Med. LLC*, No. 1:20-cv-00697-LY, 2020 WL 10230744, at *1 (W.D. Tex. Nov. 3, 2020) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994)); *Shifferaw v. Emson USA*, No. 2:09–CV–54–TJW–CE, 2010 WL 1064380, at *1 (E.D. Tex. March 18, 2010) (citing *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)).

---

[1] Because Flygrip has dropped one patent and accused product since Amazon filed its transfer motion and has provided venue discovery responses that further support Amazon's case for transfer, Amazon will withdraw its transfer motion and re-file the motion to remove the facts no longer at issue and add citations to Flygrip's discovery responses.

4

"As the Fifth Circuit has recognized, a district court may sever and transfer claims against one co-defendant to a clearly more convenient venue where those claims may have been brought, while the district court retains claims against another co-defendant." *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-cv-00876-ADA, 2022 WL 958384, at *8 (W.D. Tex. March 25, 2022) (citing *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984)). In *Monolithic*, the manufacturer of the accused product, Meraki, sought transfer of the action from WDTX to the Northern District of California ("NDCA"). Months after the transfer motion was filed, the plaintiff added two Chinese defendants and opposed the transfer motion by arguing that Meraki had not shown that the two added parties could be sued in the transferee forum and that severing and transferring would create "practical problems." *Id*. at *7-8. This Court gave "little to no weight in the transfer analysis" to the two newly added defendants, in part because they "were only added to this Action after Meraki filed its motion to transfer." *Id*. at *8. The Court also ordered that the two new parties be severed from the claims against Meraki, found that the case against Meraki could have been filed in the NDCA, and ordered transfer of those claims. *Id*.

This Court's decision in *Monolithic* is hardly alone. Many courts have rejected efforts to join "peripheral defendants" to the primary defendant, particularly when it appears designed to manipulate venue facts and frustrate an otherwise meritorious showing of transfer. In *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, the plaintiff sued Kodak in Illinois, alleging that Kodak's software infringed, and also joined Kodak licensees located in Illinois that used the software. No. 10-C-1101, 2010 WL 3516106, at *1 (N.D. Ill. Sept. 1, 2010). The court found that Kodak's customers were merely "peripheral" to the claims against Kodak because "the only significant reason plaintiff has joined Kodak's Customers in its action against Kodak is to establish

5

proper venue in the Northern District of Illinois," because their alleged infringement was based on the same Kodak software as the claims against Kodak, and because "they have nothing substantive to offer during plaintiff's action against Kodak." *Id*. at *3. Thus, the court severed and stayed the claims against the licensees and transferred the claims against primary defendant Kodak to New York. *Id*. at *6.

Likewise, in *American Vehicular Sciences LLC v. Toyota Motor Corp.*, the plaintiff sued various Toyota companies (collectively "Toyota") in the Eastern District of Texas, and also joined Toyota's local distributor, Gulf States. No. 6:12cv404 MHS–JDL, 2014 WL 3385149, at *2 (E.D. Tex. July 10, 2014). After the district court denied a motion to sever and stay the claims against the distributor and transfer the claims against Toyota, the defendants petitioned to the Federal Circuit. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1339–40 (Fed. Cir. 2014). The appeals court granted the petition, finding that Toyota had a "clear right to transfer" and directed the district court to determine whether the claims against Gulf States should be severed. *Id*. at 1341. Subsequently, the district court agreed with the defendants, severing the claims against Gulf States because they were peripheral to those against Toyota in that the allegations against Gulf States were simply "that it distributes Toyota vehicles with no role in the installation, manufacture, research, development or engineering of the accused structures and systems contained within the Toyota vehicles" and that "adjudication of the remaining claims against Toyota would likely dispose of AVS' claims against Gulf States as a severed Defendant." 2014 WL 3385149, at *2–3.

In *Oplus Technologies, Ltd. v. Sears Holding Corp.*, the patentee joined claims against the accused product manufacturer JVC with claims against retailer Sears. No. 11-CV-9029, 2012 WL 2400478, at *1 (N.D. Ill. June 21, 2012). The court granted the motion to sever, stayed the retailer claims, and transferred the manufacturer claims, because Sears was a peripheral defendant added

6

to manipulate the venue question. *Id*. at *3 ("It's unclear what, if anything, the claims against Sears can contribute to Oplus's infringement action against JVC. The obvious reason Oplus joined Sears in this action was to establish venue in the Northern District of Illinois; therefore, Sears is a peripheral defendant.")

In *Gold v. Burton Corp.*, a non-resident sued Vermont company Burton in New York, and joined as a defendant a local New York retailer of Burton's products. 949 F. Supp. 208, 209 (S.D.N.Y. 1996). Opposing transfer to Vermont, the plaintiff argued (and the district court agreed) that the local New York retailer "could not have been sued in Vermont. *Id*. Rejecting this venue trick, the Court severed and stayed the claims against the local retailer, thereby allowing "transfer [of] the main proceeding to the more convenient forum," noting that "the Court's hands are not tied where, as here, a plaintiff has joined an alleged infringer who has no real connection with the case except being downstream of the real defendant in the distribution chain for the manifest purpose of insisting upon an inconvenient venue with which the plaintiff himself has no genuine tie." *Id*. at 209–210.

The Federal Circuit has also ordered severance in these situations. In *In re Nintendo of America, Inc.*, the plaintiff filed suit in the Eastern District of Texas against Nintendo of America, which distributed the accused video game system, but also joined eleven retailer defendants that resold them, including several retailers located in Texas. 756 F.3d 1363, 1364 (Fed. Cir. 2009). After the district court denied Nintendo's motion to sever the claims against it from those against the retailers, transfer the former, and stay the latter, the Federal Circuit granted a writ of mandamus, ordering the district court to grant the motion. *Id*. at 1366. The Federal Circuit ordered transfer of the claims against Nintendo because "there is a stark contrast in relevance, convenience, and fairness between the two venues." *Id*. (quotations omitted). And, the Court ordered severance and

7

stay of the claims against the retailers because the claims against Nintendo were "predicate" to claims against the retailers, with the plaintiff having "no claim against the Retailers unless the infringement claims against Nintendo are resolved in favor of" plaintiff. *Id.*[2]

Like those in the cases discussed above, the claims against the two newly added local businesses are peripheral to those against Amazon. It is rather transparent that Flygrip added these two companies—which likely cannot be sued in the transferee forum of Colorado—simply to block transfer there. The two were not included in Flygrip's initial complaint against Amazon. Instead, they were only added several months after the transfer motion was filed and just a few weeks before Flygrip's opposition was due. *See Monolithic*, 2022 WL 958384, at *8 (severing defendants that were added after transfer motion filed and that plaintiff argued should prevent transfer); *Gold*, 949 F. Supp. at 209–10 (severing claims against local retailers that "could not have been sued in Vermont," the transferee district); *Spread Spectrum*, 2010 WL 3516106, at *1 (severing local defendants that were joined to establish venue in an inconvenient forum); *Oplus*, 2012 WL 2400478, at *3 (same).

---

[2] *See also, e.g., Richmond v. Forever Gifts, Inc.*, No. 3:14-CV-0583-K, 2015 WL 11120883, at *2 (N.D. Tex. March 18, 2015) (severing and staying claims against retailer from claims against "'upstream defendant' in this same stream of commerce patent case") (internal citations omitted); *Pipeline Techs. Inc. v. Telog Instruments Inc.*, No. CV–13–02104–PHX–SPL, 2014 WL 5241719, at *3–5 (D. Ariz. Oct. 15, 2014) (severing and staying claims against local independent sales representative of accused product manufacturer, and then transferring claims against manufacturer); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647 (S.D. Miss. 2013); *Shifferaw*, 2010 WL 1064380, at *3–4 (severing claims against retailers from those against manufacturer, which was the "primary party in interest in [the] lawsuit," and transferring the manufacturer claims); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. A.3:04-CV-2391-L, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) (severing and transferring claims against manufacturer of accused product, and staying claims against sales representatives); *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 632–37 (E.D. Va. 2003) (severing and staying claims against retailer, and transferring claims against manufacturer and importer of the product to California, the "center of the accused activity," noting that retailer was only a "peripheral" defendant in the action); *LG Elecs. Inc. v. Advance Creative Comp. Corp.*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001) (severing and staying claims against reseller of accused products).

The Federal Circuit has repeatedly warned against maneuvers to manipulate venue facts to prevent transfer, such as Flygrip's attempt here. For example, in several cases, the court held that a plaintiff's incorporation in Texas, renting of office space in Texas, or transfer of documents into Texas before filing suit is "recent, ephemeral, and an artifact of litigation," and therefore "entitled to no weight in the court's venue analysis." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (citation omitted); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011). More recently, in *In re Samsung Electronics, Ltd.*, 2 F.4th 1371, 1377–78 (Fed. Cir. 2021), the Federal Circuit rejected a plaintiff's efforts to prevent transfer from Texas by contractually limiting one plaintiff's right to sue for infringement of the patents to certain counties in Texas. The court, citing its cases rejecting "parties' attempts to manipulate venue," held that "longstanding principles against manipulation are no less applicable to the requirement that an action 'might have been brought' in the transferee district." *Id*. at 1378. So too, this Court should reject Flygrip's efforts to manipulate venue after the filing of a transfer motion by pulling into this suit two local businesses just so that it can argue that the entire suit, as amended, could not have been brought in the transferee district.

The claims are also peripheral because they add nothing to the suit against Amazon. Flygrip accuses CFE of indirectly infringing the '024 patent "by selling or offering to sell in the United States, or importing into the United States, the Popsockets Products …" (ECF No. 22, ¶ 31.) The same allegation is made against Amazon. (*Id*., ¶ 30.) In fact, the allegation against CFE, which is based on it being "a third-party seller of one or more of the Exemplary Products on the Amazon.com website" (*id*., ¶ 25), is subsumed within Flygrip's allegation against Amazon because Flygrip's Complaint and Amended Complaint accuse *Amazon* of infringement based on products

9

being sold by third-party sellers over the Amazon.com site, as shown in the image below included in Flygrip's claim chart attached to both its original Complaint and Amended Complaint:



ECF No. 22-2, at 3 (claim chart to Amended Complaint showing exemplary accused OtterBox product on Amazon.com "sold by Mac N' Cheese," a third-party seller); ECF No. 1-3, at 3 (same in claim chart to initial Complaint). CFE is one of at least 150 third-party sellers on the Amazon.com website of products accused in Flygrip's infringement contentions, including sellers in Colorado. (*See* Carraway Decl., Ex. 1, at 7, 10; *id.*, Ex. 2.) The Amended Complaint does not indicate that CFE supposedly has engaged in any conduct regarding the accused products different than Amazon or any other third-party sellers across the United States selling the same products on the Amazon.com website.

Flygrip also accuses ATX of infringing the '024 patent "by selling or offering to sell in the United States, or importing into the United States, the Popsockets Products …" (ECF No. 22, ¶

10

31.) Again, that is identical to the allegation against Amazon. (*Id*., ¶ 30.) Likewise, Flygrip accuses both ATX and Amazon of infringing the '024 patent "because Amazon and ATX makes, uses, offers for sale, sells, and/or imports certain products, including within this District, at least the OtterBox Otter+PopSocket line of handheld device cases …" (*Id*., ¶ 22.) As to how ATX infringes and is joined in this suit, the Amended Complaint merely accuses ATX of being an Amazon customer ("ATX purchases overstock and surplus merchandise from Amazon.com"). While not stated, the inference is that ATX then resells those products it purchases from Amazon. The Amended Complaint does not allege that ATX has engaged in conduct regarding the accused products different than Amazon, other Amazon customers, or any other third-party sellers.

The claims against ATX and CFE are also peripheral because "adjudication of the remaining claims against [Amazon] would likely dispose of [Flygrip's] claims against [CFE or ATX] as a severed Defendant." *Am. Vehicular*, 2014 WL 3385149, at *3; *see also MGT Gaming*, 978 F. Supp. 2d at 666 (severing and staying claims against customers because "[a]djudication of [plaintiff's] patent infringement claim against [manufacturers] will dispose of any claims against the [customers]. … In that way, the presence of the [customers] as parties neither adds nor detracts from MGT's patent infringement claim against [the manufacturers]."); *Richmond*, 2015 WL 11120883, at *2 (finding claims against downstream seller peripheral because claims against it "are likely to be resolved by the disposition of [plaintiff's] claims against [the upstream defendant]"). For example, if the '024 patent's claims are found invalid in the Amazon case (or in the Colorado DJ actions filed by the manufacturers PopSockets and Otter, who are the real defendants in Flygrip's proxy wars), then Flygrip will have no valid claims to assert against the local businesses. Likewise, because CFE and ATX are targeted only for products also at issue in the claims against Amazon (and in the Colorado DJ actions), a finding of non-infringement in

11

those cases would dispose of the claims against these local businesses. *MGT Gaming*, 978 F. Supp. 2d at 666; *LG Elecs.*, 131 F.Supp.2d 804, 812 (E.D. Va. 2001) ("if the Court holds that [upstream defendants] did not infringe LGE's patent, LGE has no case against [downstream defendant] for reselling such products"). Further, Flygrip already accuses Amazon of infringement based on sales by third parties, such as CFE (ECF No. 22-2, at 3; ECF No. 1-3, at 3), and Flygrip could not obtain a double recovery for the same product from both Amazon and customers, such as ATX. *Koh*, 250 F. Supp. 2d at 632-33 (patentee cannot recover twice for the same sale) (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568–69 (Fed. Cir. 1993) (patentee can collect only one royalty from patent infringement)); *Shifferaw*, 2010 WL 1064380, at *3; *MGT Gaming*, 978 F. Supp. 2d at 666 ("If the Court finds WMS or Aruze liable, and MGT collects royalties from either of them, then MGT cannot in turn collect royalties from the entities to whom WMS and Aruze sold the products.") (citation omitted). Because the result of the claims against Amazon will likely dispose of, or at least greatly simplify, the claims against CFE and ATX, the latter are peripheral claims that should be severed.

In sum, severing the claims against two local defendants that Flygrip added months after Amazon filed its transfer motion will follow the Federal Circuit's guidance against venue manipulation, will promote judicial economy, and will save two local businesses who are peripheral to the underlying dispute from being unfairly burdened with expensive patent litigation.

### IV. THE SEVERED CLAIMS AGAINST THE TWO WDTX BUSINESSES SHOULD BE STAYED PENDING RESOLUTION OF THE CLAIMS AGAINST AMAZON

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket, with economy of time and effort for itself, for counsel, and for litigants. *Toshiba*, 2005 WL 2415960, at *8 (citing *Landis v. North Am. Co.*, 299 U.S. 248,

254–55 (1936)). Courts routinely stay claims against resellers in favor of claims against the manufacturers or upstream sellers. *See*, *e.g.*, *Richmond*, 2015 WL 11120883, at *2 (severing and staying claims against retailer pending resolution of claims against "upstream defendant"); *Am. Vehicular*, 2014 WL 3385149, at *3 (staying severed claims against Toyota's local distributor); *Koh*, 250 F. Supp. 2d at 637; *Gold*, 949 F. Supp. at 210. In deciding whether to stay a case, courts may consider: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *GreatGigz Solutions, LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *2 (W.D. Tex. Apr. 6, 2022) (citations omitted). Here, each of these factors weighs strongly in favor of a stay.

First, a stay will not prejudice or provide a tactical disadvantage to Flygrip for the simple reason that these two local businesses provide nothing of material interest to the litigation. There is no suggestion in the Amended Complaint that they have important evidence or testimony that could not be obtained from Amazon or the manufacturers, nor that the claims against them are materially different from those against Amazon itself. And, if there is any procedural disadvantage at work in this case, it is the choice of Flygrip to file suit in WDTX, which has no rational connection to the parties, documents, witnesses, or dispute, instead of choosing a venue with some such connection, be it New York (home of Flygrip and accused product manufacturer Quest), Washington (home of Amazon) or Colorado (home of PopSockets and Otter). Flygrip would not suffer any prejudice by the failure of its effort to burden two small local businesses for no reason other than to block transfer to a far more convenient forum.

Second, as explained above, a stay of the claims against the local businesses will undoubtedly simplify the issues in question and trial of the case. Flygrip's own allegations indicate

13

that the claims against the two local businesses are peripheral to those against Amazon because, for example, they accuse CFE of infringement based on the same sales as Amazon on the Amazon.com website and they accuse ATX of infringement for the same "overstock" or "surplus" products sold by Amazon to ATX. *See* Section III above; *see, e.g.*, *GreatGigz*, 2022 WL 1037114, at *3 ("If Instacart is found not liable for infringing on the Asserted Patents in the Supplier Suit, that judgment would be dispositive of GreatGigz's infringement claims here. And if Instacart is found liable to GreatGigz in the Supplier Suit, Defendants note that GreatGigz will have exhausted its rights as a patent holder and 'will be precluded from collecting damages with respect to the same infringing product from a downstream user like the Customer Defendants.'") (internal citation omitted); *Am. Vehicular*, 2014 WL 3385149, at *3 (staying claims against Toyota distributor, noting that "adjudication of the remaining claims against Toyota would likely dispose of AVS' claims against [distributor]"). Moreover, if Amazon or the Colorado manufacturers prevail in showing that the '024 patent claims are invalid or not infringed by the PopSockets or OtterBox products, then the claims against the local businesses essentially become moot, saving these local businesses from the burden of patent litigation caused by Flygrip's decision to add them to this case.

Third, a stay is appropriate given that the case is still in the early stage: fact discovery has not even begun, and while the parties proposed a schedule, no trial date has been set. *See GreatGigz*, 2022 WL 1037114, at *4.

Because all three factors favor a stay of the claims against local businesses ATX and CFE, the Court should stay those claims pending resolution of the claims against Amazon.

V. **CONCLUSION**

Amazon respectfully requests that the Court sever the claims against the newly added local

14

defendants in the amended complaint and stay those severed claims until resolution of the claims against Amazon.

Dated:  April 22, 2022

Respectfully submitted,

/s/ J. Christopher Carraway
Darryl J. Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550
Fax: (512) 402-6865

J. Christopher Carraway (*Pro Hac Vice*)
Oregon State Bar No. 961723
chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone: (503) 595-5300
Fax: (503) 595-5301

*Attorneys for Defendant Amazon.com, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *J. Christopher Carraway*
J. Christopher Carraway

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant conferred with counsel for Plaintiff regarding the foregoing Motion To Sever and Stay Plaintiff's Newly Added Claims Against Coghlan Family Enterprises LLC, and ATX Overstock LLC. Plaintiff's counsel stated that it is opposed to the relief requested in this motion.

/s/ *J. Christopher Carraway*
J. Christopher Carraway
