IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FLYGRIP, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 6:21-cv-01081-ADA |
| | § | |
| AMAZON.COM, INC., COGHLAN | § | **JURY TRIAL DEMANDED** |
| FAMILY ENTERPRISES LLC, and ATX | § | |
| OVERSTOCK LLC | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANT AMAZON.COM, INC.'S REVISED MOTION TO TRANSFER
VENUE UNDER 28 U.S.C. § 1404(a) OR, ALTERNATIVELY, TO STAY**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

      A.    Locations Of The Parties ...................................................................... 2

      B.    The Accused Product Manufacturers .................................................... 3

            1.    *Otter Products, LLC (Colorado)* ................................................ 3

            2.    *PopSockets LLC (Colorado)* ...................................................... 4

            3.    *Quest USA Corp. (New York)* ..................................................... 4

      C.    The Other Flygrip Lawsuits .................................................................. 4

      D.    The PopSockets And Otter Declaratory Judgment Actions .................. 5

III.  LEGAL STANDARD ....................................................................................... 5

IV.   THE COURT SHOULD TRANSFER THE ACTION TO COLORADO ........................ 5

      A.    This Case Could Have Been Filed In The District of Colorado ............ 6

      B.    All Private Interest Factors Favor Transfer To The District of Colorado ............ 6

            1.    *Relative ease of access to sources of proof heavily favors transfer* .......... 6

            2.    *Availability of compulsory process to secure witness attendance heavily favors transfer* ............ 7

            3.    *Cost of attendance for willing witnesses favors transfer* ............ 8

            4.    *The practical problems factor favors transfer* .......................... 10

      C.    The Public Interest Factors Are Either Neutral Or Weigh In Favor Of Transfer . 11

            1.    *Court congestion favors transfer or (at minimum) is neutral* .................. 11

            2.    *The local interest favors transfer* ............................................ 12

3.      *The remaining public interest factors are neutral* ................................... 13

    D.      Summary of Factors .............................................................................. 14

V.      ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING
        RESOLUTION OF THE MANUFACTURER DJ CASES ............................................. 14

VI.     CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Pages(s)

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
   No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ........................... 13

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
   358 F.3d 337 (5th Cir. 2004) ........................................................................................... 5

*Capital Sec. Sys., Inc. v. ABNB Federal Credit Union*,
   No. 2:14-cv-265, 2014 WL 5334270 (E.D. Va. Oct. 20, 2014) ......................................... 11, 12

*CyWee Grp. Ltd. v. Huawei Device Co.*,
   No. 2:17-CV-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018)............................... 15

*Fintiv Inc. v. Apple Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678d (W.D. Tex. Sept. 13, 2019) ........................ 6, 7

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006)........................................................................................... 15

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*,
   No. 6-21-CV-00807, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022) .................................. 14, 15

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
   No. 6:20-cv-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021)............................ 12

*In re Apple Inc.*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ..................................... 8

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ............................................................... 8

*In re Apple, Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)................................................................... 11, 12, 13

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ............................................................. 10

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)........................................................... 6, 8, 12

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) ............................................................ 11, 15

*In re Google, LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ................................................... 8

*In re Google*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ................................................... 11

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).......................................................................................... 12, 13

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................................................... 11

*In re NetScout Sys., Inc.*,
  No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)................................................... 10

*In re Nintendo Co., Ltd.*,
  544 F. App'x 934 (Fed. Cir. 2013) .......................................................................................... 7

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)................................................................................................ 6

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2009).............................................................................................. 15

*In re Samsung Elecs. Co., Ltd.*,
  2 F.4th 1371 (Fed. Cir. 2021) ........................................................................................... 10, 12

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014).............................................................................................. 7

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................................................... 5

*In re Volkswagen of Am. Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................................................ 5, 7

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990).............................................................................................. 15

*Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*,
  No. 6:20-CV-00316-ADA, 2021 WL 4555803 (W.D. Tex. Oct. 4, 2021)............................. 14

*Koss Corp. v. Plantronics, Inc.*,
  No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) ....................... 7, 12

*Open Text Corp. v. Alfresco Software, Ltd.*,
    No. 6:20-cv-0920-ADA, ECF No. 152 (W.D. Tex. Nov. 22, 2021) .......................................... 8

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)..................... 10, 13

*Proven Networks, LLC. v. Netapp, Inc.*,
    No. W-20-CV-00369-ADA, 2021 WL 4875404 (W.D. Tex. Oct. 19, 2021)..................... 12, 13

*Sewing v. Stryker Corp.*,
    No. CIV.A. H-10-4818, 2012 WL 3599459 (S.D. Tex. Aug. 14, 2012) ................................. 10

**Statutes**

28 U.S.C. § 1404 ............................................................................................................. 1, 2, 5, 15

**Rules**

Fed. R. Civ. P. 45 ....................................................................................................................... 8

## I.    <u>**INTRODUCTION**</u>

Defendant Amazon.com, Inc. (together with its subsidiaries, "Amazon") respectfully moves under 28 U.S.C. § 1404(a) to transfer this patent action to the District of Colorado ("DCO").

This case was filed far from the places most connected to the dispute. Both parties in the filed complaint are headquartered far from Texas, with Plaintiff Flygrip Inc. ("Plaintiff" or "Flygrip") in New York and Amazon in Seattle, Washington. Flygrip has no connection to Texas other than filing this and two other patent lawsuits six months ago. In contrast, the nucleus of accused activity is clearly centered in Colorado, the home of two of the three third-party companies that created and supply the accused products at issue (the third in New York, near Plaintiff). Those two Colorado manufacturers—the true responsible entities—are not within this Court's subpoena power or any party's control, but they are located within 100 miles of the Denver courthouse.

Furthermore, both Colorado-based manufacturers have filed lawsuits against Flygrip in Colorado seeking declaratory judgments ("DJs") that their products (including those listed on Amazon.com) do not infringe Flygrip patents. Their DJ suits will address the same patent asserted here and the same products of those companies at issue here, and will directly involve the manufacturers of the accused products. Thus, transferring this action to Colorado will not introduce any inefficiencies and will in fact permit those accused products to be addressed on the merits in the preferred manner involving the true stakeholders—the manufacturers themselves.

Amazon initially filed its transfer motion on January 10, 2022. On April 11, 2022, seven months after initiating this suit, coming up short in venue discovery with no legitimate basis to keep the complaint it filed in this District, Flygrip amended its complaint to add two small local businesses who Flygrip alleges are a third-party seller of accused products on the Amazon.com website and an Amazon customer of accused products. This amendment, however, is nothing but

a trick to manipulate venue facts after filing in an effort to defeat transfer, which the Federal Circuit and numerous courts have deemed improper. Thus, Amazon has separately moved to sever those local businesses and stay the claims against them pending resolution of this case. (ECF No. 28.) Amazon now withdraws its previous transfer motion and re-files to address the dropping of one asserted patent, to cite Flygrip's venue discovery responses, and to request a stay in the alternative.[1]

With no legitimate parties, witnesses, documents, accused product manufacturers, or local interest in this District, and with Colorado having key witnesses and documents and being home to two of the three manufacturers of the accused products as well as lawsuits by those manufacturers addressing the same patent and products, Colorado is a clearly more convenient venue under 28 U.S.C. § 1404(a). The Court should sever the peripheral newly added local defendants and transfer this action to Colorado. In the alternative, the Court should stay this case pending the resolution of the manufacturers' DJ cases in Colorado, which will entirely resolve Flygrip's claims against Amazon as to nearly all accused products.

## II.    **BACKGROUND**

### A.    **Locations Of The Parties**

Despite suing in the Western District of Texas ("WDTX"), Flygrip has no business ties to Texas. Flygrip is incorporated and located in New York. (ECF No. 1, ¶ 1; ECF No. 14-7.) Flygrip's owner/CEO Michael Karmatz (and named inventor) (ECF No. 1-1, at 1; ECF No. 1-2, at 1), lives in New York as well. (ECF No. 14-8.) Flygrip owns no land in Texas, rents no office there, makes no products there, and employs no one there. (ECF Nos. 14-9, 14-10, 14-11, 14-12.) Flygrip admits it knows of no witnesses, no sources of proof, and no development, marketing, or licensing

---

[1] Instead of re-filing all the factual declarations and exhibits, which have not changed, Amazon cites to the ECF numbers of the original filing. Amazon also adds one exhibit (Flygrip's own discovery responses).

activities relating to the Asserted Patents in the WDTX. (Decl. of Chris Carraway, Ex. 1, at 3–5.)

Amazon is a Delaware corporation with its headquarters in Seattle. (ECF No. 1, ¶ 2.) Although Flygrip makes an assertion that Amazon has infringed by "making, using, offering to sell, selling and importing products that infringe," that allegation is entirely and conclusory when it comes to "making." To the contrary, Amazon has not manufactured any of the accused products (ECF No. 14-1, ¶ 3; ECF No. 14-3, ¶ 3), and Flygrip has no basis to make such an assertion. Rather, Amazon is accused of infringement based on the listing and sale on the Amazon.com website of products made and supplied by three other companies, namely PopSockets, Otter, and Quest. (ECF No. 22, ¶¶ 22, 28, 30, 38; ECF No. 22-2, at ECF page 4 of 10.)

While Amazon subsidiaries do have offices and employees in this District, they have no special involvement with the accused products. (ECF No. 14-1, ¶ 4; ECF No. 14-3, ¶ 4; ECF No. 14-2, ¶ 3.) To the extent any Amazon fulfillment center in this District might ship an accused product, it is no different in that regard than similar fulfilment centers located throughout the United States. (ECF No. 14-2, ¶ 5.) Instead, any activity by Amazon specifically involving the accused products made by PopSockets, Otter, and Quest, including contracting for, marketing of, and financial accounting for the products, has involved employees in Amazon's Seattle headquarters. (ECF No. 14-1, ¶ 4; ECF No. 14-3, ¶ 4; ECF No. 14-2, ¶ 3.)

### B.    The Accused Product Manufacturers

The amended complaint asserts only U.S. Patent No. 10,800,024 and accuses the following of infringement: (1) "OtterBox Otter+PopSocket line of handheld device cases"; (2) "Popsockets LLC line of PopGrip (and related) products"; and (3) "Quest USA Corp. line of SpinPop products." (ECF No. 22, ¶ 18.) Two are supplied by companies located in Colorado, *none* in Texas.

### 1.    *Otter Products, LLC (Colorado)*

Otter Products, LLC ("Otter") manufactures and supplies to Amazon the accused

3

"OtterBox Otter+PopSocket" cases. (ECF No. 14-4, ¶¶ 6–7; ECF No. 14-1, ¶ 3.) Otter is a Colorado company with its headquarters in Fort Collins, CO. (ECF No. 14-4, ¶ 3.) All of Otter's documents regarding the accused Otter+PopSocket cases are in Fort Collins. (*Id.*, ¶ 11.) All Otter's work on the development, marketing, and sales of the accused Otter+PopSocket cases occurred in Fort Collins, with six Colorado witnesses having this knowledge. (*Id.*, ¶¶ 7–10.)

### 2. *PopSockets LLC (Colorado)*

Popsockets LLC ("PopSockets") manufactures and supplies to Amazon the accused PopGrip devices. (ECF No. 14-5, ¶ 6; ECF No. 14-3, ¶ 3.) PopSockets is a Colorado company located in Boulder, where it stores its U.S. documents the accused PopGrip and Otter+PopSocket devices. (ECF No. 14-5, ¶¶ 3, 8, 12.) At least eight PopSockets employees in Colorado were involved with the development, manufacturing, marketing, and sales of those accused devices. (*Id.*, ¶¶ 6–7, 11.) PopSockets has never had employees in Texas with information or experience regarding the PopGrip or Otter+PopSocket products. (*Id.*, ¶ 13.)

### 3. *Quest USA Corp. (New York)*

Quest USA Corp, which the Complaint alleges to be the source of the accused "Quest USA Corp. line of SpinPop products" (ECF No. 1, ¶ 23, ECF No. 1-5, at ECF page 3 of 13) is a New York corporation located in Brooklyn. (ECF No. 14-16.)

### C.    The Other Flygrip Lawsuits

On the same day Flygrip sued Amazon, it also filed similar lawsuits against Walmart Inc. and Five Below, Inc. (ECF Nos. 14-33, 14-34.) Those actions also have no unique nexus to this District: Walmart is a Delaware corporation headquartered in Arkansas, and Five Below is incorporated and headquartered in Pennsylvania. (ECF No. 14-33, ¶ 2, ECF No. 14-34, ¶ 2.) One suit targets Walmart's sales of products from Colorado and New York companies, while the other

targets Five Below's sales of products from New York companies only.[2]

### D.    The PopSockets And Otter Declaratory Judgment Actions

On October 28 and December 8, 2021, respectively, PopSockets and Otter filed actions against Flygrip in the District of Colorado seeking a declaratory judgment that their products (including PopGrip and Otter+PopSocket products sold by Amazon and at issue here) do not infringe the patents Flygrip asserts in this action. (ECF No. 14-35, ¶¶ 1, 4, 32; ECF No. 14-36, ¶¶ 1, 4, 22.) Flygrip has moved to dismiss the DJ Complaints, but the DCO court has yet to rule.

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To evaluate transfer under Section 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If so, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted).[3]

## IV.    THE COURT SHOULD TRANSFER THE ACTION TO COLORADO

The District of Colorado is the most convenient forum for this case given the presence of

---

[2] The Walmart action accuses products of Otter and PopSockets (both Colorado companies) and of Quest USA and Merkury Innovations (both located in New York). (ECF No. 14-33, ¶¶ 18, 23, 30; ECF Nos. 14-16, 14-18.) The Five Below action targets products of Quest USA, Merkury, and Bytech NY (all located in New York). (ECF No. 14-34, ¶¶ 20, 27; ECF Nos. 14-16, 14-18, 14-19.)

[3] The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

two of the three accused product manufacturers, their witnesses and evidence, most of the accused development work, and two lawsuits regarding the same patent and most of the accused products at issue here. Where, as here, "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.    This Case Could Have Been Filed In The District of Colorado

There is no question that Flygrip could have filed its complaint against Amazon in Colorado, as the Complaint alleges infringement has occurred "throughout the United States" (*e.g.*, ECF No. 1, ¶ 23), and because Amazon has offices in Denver. (ECF No. 14-20.) As set forth in Amazon's motion to sever (ECF No. 28), the Court should sever and then stay the peripheral claims against the two small local businesses that Flygrip chose to make pawns in its venue game just two weeks ago. Thus, they pose no bar to transfer of the claims against Amazon.

### B.    All Private Interest Factors Favor Transfer To The District of Colorado

#### 1.    *Relative ease of access to sources of proof heavily favors transfer*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019).

In the typical patent case, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Because this case accuses a reseller, not a manufacturer, the documents regarding the development, manufacturing, and marketing of the accused products will come from the three manufacturers, two in Colorado and one in New York. *See, e.g., Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *2–3 (W.D. Tex. May 20,

2021) (finding this factor supported transfer to location of both defendant's and third party's documents related to accused product). Thus, the bulk of the documents regarding the accused products are in Colorado. (ECF No. 14-5, ¶¶ 8, 12; ECF No. 14-4, ¶ 11.)[4]

In contrast, there are no sources of proof in WDTX. Flygrip knows of none. (Carraway Decl., Ex. 1 at 4.) Amazon did not develop or manufacture the accused products (ECF No. 14-1, ¶ 3; ECF No. 14-3, ¶ 3.), so any relevant Amazon documents would merely relate to contracts for the accused products and financial results for sales through the Amazon website, all generated by employees in Seattle. (ECF No. 14-1, ¶ 4; ECF No. 14-3, ¶ 4; ECF No. 14-2, ¶ 4.). Because these documents are located in neither this District nor the DCO, they are not relevant to the transfer analysis. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

The question presented for this factor is:  between WDTX and DCO, which has the greater relative ease of access to sources of proof? Because the documents regarding the accused products are mostly located in Colorado, because *no* relevant documents are located in this District, and because any remaining relevant documents are in other districts and thus not considered, this factor overwhelmingly favors transfer to Colorado.

## 2. *Availability of compulsory process to secure witness attendance heavily favors transfer*

For this factor, the Court considers "particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party

---

[4] *Cf. In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("In all likelihood, the retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works. Indeed, we and other courts have all but said as much in the analogous context of the 'customer suit exception,' which endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the 'true defendant.'") (citation omitted).

witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("*Apple I*"). Under this factor, "a party does not have to prove that a witness is unwilling to testify, and when a party has failed to show that a witness is willing to testify, that witness will be presumed to be unwilling." *Open Text Corp. v. Alfresco Software, Ltd.*, No. 6:20-cv-0920-ADA, ECF No. 152, at 8 (W.D. Tex. Nov. 22, 2021).

Here, as discussed above, because two of the three suppliers of the accused products are headquartered in Colorado, nearly all of the key third-party witnesses (at least fourteen) are located in Colorado. (ECF No. 14-5, ¶¶ 6–7, 11; ECF No. 14-4, ¶¶ 7–10.) All of these witnesses are subject to compulsory process in the DCO. *See* Fed. R. Civ. P. 45(c)(1)(A), (B).

These witnesses are located more than 700 miles from Waco, however, and thus cannot be compelled to provide testimony at trial should the case remain in this District. They also have not indicated any willingness to travel to Waco for trial in this matter and thus are presumed to be unwilling. (ECF No. 14-4, ¶ 12; ECF No. 14-5, ¶ 14); *Open Text*, *supra*, at 8.

No party can compel these Colorado witnesses to testify. Because only a Colorado court could compel them to attend trial, this factor weighs strongly in favor of transfer. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) ("*Apple III*") (finding that the compulsory process factor strongly favored transfer where third-party companies responsible for designing and developing the accused products were in the transferee district).

### 3.    *Cost of attendance for willing witnesses favors transfer*

Convenience of witnesses is "an important factor," *Genentech*, 566 F.3d at 1343, and "should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time," *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("*Google II*"). The Federal Circuit has indicated that time can be a more important metric than distance. *Id.*

Both parties are headquartered far from this District—Flygrip in New York and Amazon in Seattle. (*See* above Section II.A.) While the parties are also located far from Colorado, the respective travel time for the witnesses of the parties to travel to Waco and Denver actually favors transfer, albeit slightly. For example, the flight time from Seattle to Denver is about an hour shorter than the flight times from Seattle to Dallas-Fort Worth or Austin, with the drive to Waco adding another 90 minutes to Denver's advantage. (ECF No. 14-6, ¶¶ 24–25; ECF Nos. 14-21, 14-24, 14-27.) The flight time from New York to Denver is about 30 minutes longer than the flight times to DFW or Austin, but that small advantage is more than offset by the drive to Waco. (ECF No. 14-6, ¶¶ 24–25; ECF Nos. 14-22, 14-24, 14-27.)

While the DCO advantage in travel time may be slight, litigating in Waco versus Denver would be much less convenient to Amazon's employee witnesses who may testify. (ECF No. 14-1, ¶ 6; ECF No. 14-3, ¶ 6; ECF No. 14-2, ¶ 6.) Any Amazon employees with relevant information for this case could work out of the Amazon offices in Denver, less than one mile from the Federal courthouse. (ECF No. 14-1, ¶ 6; ECF No. 14-3, ¶ 6; ECF No. 14-2, ¶ 6; ECF No. 14-28.)[5]

Given that travel times for both parties' witnesses are slightly shorter to Denver than Waco and given the significant advantage Denver has for Amazon employee witnesses due to Amazon's offices there, this factor favors transfer. Furthermore, to the extent the Court considers the advantage of Denver to any of the many Colorado accused product witnesses who may be willing to testify, the factor tilts even more heavily in favor of transfer.

---

[5] While the third party manufacturer witnesses have been counted in the compulsory process factor, the Court should not ignore the significant convenience of DCO to these witnesses were any of them willing to testify in either venue. The DCO courthouse is located within 30 miles of PopSockets and 70 miles of Otter. (*See* above Section II.B; ECF No. 14-6, ¶¶ 24–25.) Their employees could drive to the Denver courthouse for trial testimony, permitting them to testify and defend their products without missing days of work away from home. (*Id.*) *See Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *6 (W.D. Tex. Aug. 20, 2020) ("it is the convenience of non-party witnesses, rather than of employee witnesses, [ ] that is the more important factor accorded greater weight") (citation omitted).

#### 4.    *The practical problems factor favors transfer*

Judicial economy weighs in favor of transfer because this case is in its early stages, and transfer at this point would not cause delays. *See Parus*, 2020 WL 4905809, at *6–7 ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited."). There has been no substantive motion practice to date. "Nor has this Court obtained any substantial familiarity with the case that would support judicial economy in retaining and trying this suit." *Sewing v. Stryker Corp.*, No. CIV.A. H-10-4818, 2012 WL 3599459, at *3 (S.D. Tex. Aug. 14, 2012).

While Flygrip might point to the two suits it filed on the same day in this District against other retailers of accused products, those two suits do not actually weigh against transfer. First, "the judicial economy of having the same judge handle multiple suits involving the same patents should [not] dominate the transfer inquiry." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *see also In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[W]hile we recognize that judicial economy can serve important ends in a transfer analysis, we have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor.").

Second, those two other cases do not involve the same set of patents and accused products as this one: both cases involve an additional patent not at issue here, the Five Below case shares just one overlapping accused product (Quest USA), and the Walmart case includes additional accused products (by Merkury) not at issue here. *See In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379–80 (Fed. Cir. 2021) (finding judicial economy concern "overstated" given that other case in the district had only partial overlap of patents and different accused products).

Finally, and perhaps most important, transfer of this action to Colorado would *not* multiply the number of courts addressing the same issues because the DCO already has the two DJ

addressing the same patent and nearly all of the accused products at issue here. In fact, because the Colorado cases involve the manufacturers of accused products at issue in this retailer case, a transfer would be the most efficient course, allowing one court to address the accused product issues for the manufacturers and, by extension, Amazon and *all* potential retailers.[6]

Because Amazon seeks transfer at this early stage to a district where there are two existing DJ suits addressing the same patents and nearly all the accused products—lawsuits in which the manufacturers of those accused products are defending their products directly for themselves and for products sold to Amazon and all other retailers—this factor weighs in favor of transfer.

### C.    The Public Interest Factors Are Either Neutral Or Weigh In Favor Of Transfer

#### 1.    *Court congestion favors transfer or (at minimum) is neutral*

Under recent Federal Circuit case law, "a court's general ability to set a fast-paced schedule is not particularly relevant to" the court congestion factor. *In re Apple, Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("*Apple II*") (citation omitted). Instead, a court should look at the statistics for the "cases per judgeship and average time to trial of the two forums … disregarding the particular district court's ability to push an aggressive trial date." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021); *see also Google II*, 2021 WL 5292267, at *3.

Using the Federal Circuit's recommended metrics of "cases per judgeship and average time to trial," the differences between WDTX and DCO are not significantly different, with civil median

---

[6] *See, e.g.*, *Capital Sec. Sys., Inc. v. ABNB Federal Credit Union*, No. 2:14-cv-265, 2014 WL 5334270, at *6 (E.D. Va. Oct. 20, 2014) (finding "interests of justice and judicial economy would also be well served by transfer" to site where manufacturer suit was pending because "[c]onsolidated under the roof of a single courthouse, the suits against the customer banks can be handled uniformly, and then quickly dealt with once the manufacturer suit is resolved" and would "minimize[] the possibility of inconsistent judgments, not only between manufacturer and customer, but also between similarly situated customers …"). *Cf. In re Google Inc.*, 588 F. App'x 988, 991–92 (Fed. Cir. 2014) ("*Google I*") (ordering district court to stay earlier-filed cases against defendants in favor of later-filed declaratory judgment action filed by supplier of accused technology in part due to inefficiency in "requiring two federal district courts and the parties to expend resources to resolve substantially similar claims and issues").

time to trial 25.1 months in WDTX and 27.3 months in DCO, and with civil cases per district judge of 215 cases (3882 / 18) in WDTX and 247 cases (3215 / 13) in DCO. (ECF No. 14-6, ¶¶ 27–30, Ex. 23–26.) Thus, *this factor is generally neutral*. Even if the differences above were considered to slightly weigh against transfer, this factor is considered "speculative" and should not outweigh other factors that favor transfer. *Genentech*, 566 F.3d at 1347.

### 2.    *The local interest favors transfer*

The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*." *Apple II*, 979 F.3d at 1345 (emphasis in original) (quotation omitted). In other words, "the focus is on where the events forming the basis for infringement occurred, and not the parties' generalized connections to the forum." *Proven Networks, LLC. v. Netapp, Inc.*, No. W-20-CV-00369-ADA, 2021 WL 4875404, at *5 (W.D. Tex. Oct. 19, 2021) (citation omitted). "The most relevant considerations are therefore where the design, development, and sale of the accused products occurred." *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. 6:20-cv-01092-ADA, 2021 WL 4953884, at *6 (W.D. Tex. Oct. 25, 2021).[7] Moreover, local interest is strong in the location where the accused products were developed because an infringement lawsuit "calls into question the work and reputation" of individuals involved in that activity. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Here, most of the accused products were designed and developed in Colorado by Colorado

---

[7] *See also Koss*, 2021 WL 2075685, at *8 (finding local interest was in NDCA, where "accused products and features were designed and developed"); *Samsung*, 2 F.4th at 1380 (finding local interest was in NDCA, where third parties "researched, designed, and developed most of" the accused applications which defendants distributed on their phones); *Capital Security*, 2014 WL 5334270, at *5 ("In a patent infringement action, as a general rule, the preferred forum is that which is the center of the accused activity .... [and t]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.") (alteration in original) (internal quotations omitted).

companies and residents, with two of the three manufacturers, their employees, and their development work located there. (*See* above Section II.B.) Thus, most of the "events forming the basis for [alleged] infringement occurred" in Colorado, *Proven Networks*, 2021 WL 4875404, at *5, and this lawsuit "calls into question the work and reputation of several individuals residing in" Colorado, *Hoffmann-La Roche*, 587 F.3d at 1336, making the local interest in the DCO strong.

There is no similar local interest in the WDTX. No development of any accused products occurred in this District. (*See* above Section II.B.) Instead, the remaining accused products were designed and developed by Quest, which is in New York. (ECF No. 14-16.) Nor does Flygrip have any relationship to this District. (ECF Nos. 14-7 to 14-12; Carraway Decl., Ex. 1) *See Adobe*, 823 F. App'x at 930 (ordering transfer from WDTX where plaintiff "was not registered to do business in Texas, and it did not appear to have any operations, employees, or customers in Texas").

While Amazon has offices and employees in the WDTX, they are no more involved with the accused products than with any other product listed on the Amazon.com website. (*See* above Section II.A.) Thus, Amazon's ties to the WDTX involve at most "generalized connections to the forum," not the "significant connections between a particular venue and the events that gave rise to a suit." *Apple II*, 979 F.3d at 1345 (finding Apple's offices and "state and local tax benefits" in WDTX were "general contacts with the forum that are untethered to the lawsuit").[8]

As between Colorado and this District, the local interest weighs entirely in favor of transfer to the DCO, where the design and development of most of the accused products occurred.

### 3.    *The remaining public interest factors are neutral*

The remaining two public interest factors are neutral. *See Parus*, 2020 WL 4905809, at *8.

---

[8] *See also Hoffman-La Roche*, 587 F.3d at 1338 ("an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *5 (W.D. Tex. May 21, 2021) (finding that "presence of infringing users" in the WDTX "creates no local interest because such a connection equally exists in virtually all other districts").

D.    **Summary of Factors**

All factors either weigh in favor of transfer to Colorado or are neutral. Thus, the Court should transfer the action against Amazon to Colorado.

**V.    ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE MANUFACTURER DJ CASES**

Were the Court to deny Amazon's motion to sever the new local businesses Flygrip just added and deny transfer of the claims against Amazon to Colorado, the Court should nonetheless stay all claims in this action until the PopSockets and Otter DJ actions aimed at clearing their products (including their products at issue here) are resolved.

"A trial court has broad discretion to stay an action against a party to promote judicial economy." *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *1 (W.D. Tex. Apr. 6, 2022). This is particularly true when a patent infringement case is brought not against the manufacturer of a product, but a customer who merely resells the product. *Id*. ("Where suit is brought against a manufacturer and its customers, the action against the customers should be stayed pending resolution of the case against the manufacturer to promote judicial economy."). The court analyzes three factors to determine whether to stay a retailer case in favor of a manufacturer case: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, No. 6:20-CV-00316-ADA, 2021 WL 4555803, at *2 (W.D. Tex. Oct. 4, 2021) (citations omitted).

First, Amazon is a mere reseller of the PopGrip and Otter+PopSocket products manufactured and supplied by PopSockets and Otter. (ECF No. 14-1, ¶ 3; ECF No. 14-3, ¶ 3; ECF No. 14-5, ¶ 6.) Accordingly, staying this action in favor of the Colorado DJ actions is warranted.

*In re Nintendo of Am., Inc.,* 756 F.3d 1363, 1366 (Fed. Cir. 2009). Indeed, resolution of the Colorado actions will resolve most issues in this action. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (precluding plaintiff from seeking damages from customers because damages already collected from manufacturer). Second, Amazon agrees to be bound by the outcomes of the Colorado DJ actions. *GreatGigz*, 2022 WL 1037114, at *3. Third, PopSockets and Otter are the only sources of the accused PopGrip and Otter+PopSocket products. (ECF No. 14-1, ¶ 3; ECF No. 14-3, ¶ 3.) While there is an additional accused product (Quest), the Court may stay the entire case in the interest of judicial economy. *See Google I*, 588 F. App'x at 991.[9] Because all factors favor a stay, this action should be stayed pending resolution of the Colorado DJ actions.

## VI.    CONCLUSION

Amazon respectfully requests that the Court transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a). In the alternative, the Court should stay this action until resolution of the Colorado manufacturer DJ actions.

Dated:  April 22, 2022

Respectfully submitted,

*/s/ J. Christopher Carraway*
Darryl J. Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC

---

[9] While the Court "gives great weight" to the three customer-manufacturer stay factors, the Court may also consider the general stay factors, *GreatGigz*, 2022 WL 1037114, at *3, all of which support a stay. First, staying this action will not prejudice Flygrip because Flygrip will have a full opportunity to argue infringement against PopSockets and Otter in the Colorado actions. Second, staying the action will simplify the issues because resolution of infringement of the PopSockets and Otter products would resolve the same issues in this action. *See, e.g., Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Given that most of the relevant documents are with the manufacturers in Colorado, a stay would "would obviate the need for non-party discovery from [PopSockets andOtter]" in this action. *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 WL 4002776, at *3 (E.D. Tex. Aug. 22, 2018). Third, the early stage of this action favors a stay. As of the filing of this Motion, an answer has been filed, along with a proposed schedule and a case readiness status report, and—just in the last two days—Amazon's opening *Markman* brief, the motion to sever local businesses, and this Motion. Accordingly, this factor weighs in favor of a stay. *See, e.g., id.* at *4 (finding this factor weighed in favor of a stay even though claim construction had begun).

401 Congress Ave., Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550
Fax: (512) 402-6865

J. Christopher Carraway (*Pro Hac Vice*)
Oregon State Bar No. 961723
chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone: (503) 595-5300
Fax: (503) 595-5301

*Attorneys for Defendant Amazon.com, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *J. Christopher Carraway*
J. Christopher Carraway

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant conferred with counsel for Plaintiff regarding the foregoing Motion To Transfer Venue Under 28 U.S.C. § 1404(a) Or, Alternatively, To Stay. Plaintiff's counsel stated that it is opposed to the relief requested in this motion.

/s/ *J. Christopher Carraway*
J. Christopher Carraway