IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **FLYGRIP, INC.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  6:21-cv-1081-ADA |
| | § | |
| **AMAZON.COM, INC., COGHLAN** | § | |
| **FAMILY ENTERPRISES LLC, and** | § | |
| **ATX OVERSTOCK LLC** | § | |
| | § | |
| *Defendants*. | | |


**PLAINTIFF FLYGRIP INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT AMAZON.COM, INC.'S MOTION TO TRANSFER,
<u>OR ALTERNATIVELY TO STAY</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................1

    A.   The Pending Flygrip Cases............................................................................1

    B.   Locations of the Parties .................................................................................2

    C.   The Declaratory Judgment Actions Against Flygrip................................3

III.  LEGAL STANDARDS ..................................................................................3

IV.   THIS CASE SHOULD NOT BE TRANSFERRED .....................................4

    A.   This Case Could Not Have Been Brought in Colorado...........................4

    B.   This Case Should Not be Transferred to Colorado..................................4

    C.   The Private Interest Factors Weigh Against Transfer .............................5

        1.   The Relative Ease of Access to Sources of Proof ............................5

        2.   The Availability of Compulsory Process to Secure Witness Attendance .......7

        3.   Cost of Attendance for Willing Witnesses Does Not Favor Transfer.............9

        4.   The Practical Problems Factor Does Not Favor Transfer .............................11

    D.   The Public Interest Factors Weigh Against Transfer .............................13

        1.   Administrative Difficulties Flowing from Court Congestion ......................13

        2.   Local Interest in Having Localized Interests Decided at Home...................14

        3.   Familiarity of the Forum with the Law That will Govern the Case .............15

        4.   Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law ...................................................................15

V.    THIS CASE SHOULD NOT BE STAYED ................................................15

    A.   The Factors Do Not Support a Stay.......................................................15

        1.   Staying This Action Will Prejudice Flygrip.........................................16

        2.   Staying This Action Will Not Simplify the Issues .......................................16

        3.   The Stage of This Action Does Not Favor a Stay .........................................17

B.    The Customer Suit Exception Doctrine Does Not Apply.....................................17

VI.    CONCLUSION AND PRAYER ...................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Broadband iTV, Inc. v. DISH Network L.L.C.*, No. 6:19-cv-716-ADA, 2021 WL 1566455 (W.D. Tex. Apr. 20, 2021)......................................................................................... 6, 14

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)...................................... 19

*Defense Distributed; Second Amendment Found., Inc. v. Bruck*, No. 21-50327 (5th Cir. Apr. 1, 2022) ................................................................................................................. 8

*EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-CV-00080-ADA, 2021 WL 1535414 (W.D. Tex. Apr. 16, 2021)............................................................................................. 3, 5, 9

*Fintiv, Inc. v. Apple Inc.*, 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019). ...................................................................................................... 9

*Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704 (Fed. Cir. 2013)................ 17

*Hammond Development International, Inc. v. Amazon.com, Inc.*, No. 6:19- cv-355-ADA, 2020 WL 6136783 (W.D. Tex. Mar. 30, 2020) .................................................... 9

*Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) ............................... 4

*Ikorongo Texas LLC v. Uber Techs., Inc.*, No. 6:20-cv-843-ADA, 2021 WL 2143740 (W.D. Tex. May 26, 2021) .............................................................................. 3, 9

*In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010)............................................................. 11

*In re Volkswagen of Am. Inc.*, 545 F.3d 304 (5th Cir. 2008)................................................... 4

*Katz v. Siegler*, 909 F.2d 1459 (Fed. Cir. 1990) .................................................................... 19

*Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021).................................................................................................. 6

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012) .................................................... 17

*NCS Multistage v. Nine Energy Serv., Inc.*, No. 6:20-cv-277-ADA, 2021 WL 1199623 (W.D. Tex. Mar. 30, 2021). ................................................................................ 11

*ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021);................................................................................................. 5, 13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)........................................................... 5

*Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, No. 12-088-RGA, 2012 WL 2803695 (D. Del. Jul. 10, 2012) ..................................................................................... 18

*SITO Mobile R&D IP v. Hulu, LLC*, No. 6:20-cv-472-ADA, 2021 WL 1166772 (W.D. Tex. Mar. 24, 2021) ........................................................................................... 5

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349 (Fed. Cir. 2011) ... 17

*Tegic Commc'n Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335 (Fed. Cir. 2006) .................................................................................................................. 18, 19

*Unification Technologies LLC v. Micron Technology, Inc.*, No. 6:20-cv-500-ADA, 2022 WL 92809 (W.D. Tex. Jan. 10, 2022) ...................................................................................... 4

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31, 2014) ............................................................................................................................ 8

## Rules

Fed. R. Civ. P. 45(a)(2) ........................................................................................................ 7

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................................... 7

Plaintiff Flygrip, Inc. ("Flygrip") files this response opposing Defendant Amazon.com Inc.'s ("Amazon") motion to transfer, or alternatively, to stay (ECF No. 30, "Motion").

## I.    INTRODUCTION

Amazon's Motion should be denied because the District of Colorado ("DCO") is not a clearly more convenient forum for resolving this dispute.  Amazon, a company headquartered in Seattle, Washington, omits material facts regarding the location of its relevant witnesses and about its contacts with the Western District of Texas ("WDTX") in pursuit of convincing this Court to transfer this case to Colorado. To obfuscate these glaring omissions, Amazon hinges its transfer theory on the locations of two manufacturers[1] of the accused products.  However, Amazon cannot deny the judicial economy that is realized by having this Court resolve the dispute along with the other two cases that are currently pending here and which involve the same accused products and same patent claims.  Amazon also cannot establish that the current case can be maintained in Colorado because venue would not be proper in Colorado for Amazon's co-defendants.  Further, Amazon cannot overcome its heavy burden to show that transfer is warranted, particularly when Amazon has no relevant witnesses in Colorado, has conceded in other cases that WDTX is a convenient venue for its own witnesses, and no other factor clearly favors transfer. Accordingly, the Court should deny the Motion.

## II.    BACKGROUND

### A.    The Pending Flygrip Cases

There are currently three Flygrip cases pending in this district.  In addition to this case, the other cases are: *Flygrip, Inc. v. Five Below, Inc*., No. 6:21-cv-1080-ADA and *Flygrip, Inc. v. Walmart Inc*., No. 6:21-cv-1082-ADA.  According to the initial filings of the cases, including the

---

[1] The accused products are labelled "Made in China."  The US-based entities leaned on by Amazon in its Motion are more appropriately deemed "suppliers" than "manufacturers".

original complaint filed on October 18, 2021 (the "Original Complaint") in this action, there were six accused products distributed as follows:

|  | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Nite Ize Flipout | Merkury Grip'z | Bytech SideKick |
|---|---|---|---|---|---|---|
|  | Colorado | Colorado | NY | Colorado | NY | NY |
| Five Below 1080 |  |  | x |  | x | x |
| Amazon 1081 | x | x | x | x |  |  |
| Walmart 1082 | x | x | x |  | x |  |

Flygrip amended its complaint on April 11, 2022 (the "Amended Complaint", ECF No. 22) to remove the Nite Ize Flipout product as an accused instrumentality in this case, and to add separate and additional defendants - Coghlan Family Enterprises LLC ("CFE"), an Amazon third-party seller, and ATX Overstock LLC ("ATX"), a seller of surplus and overstock merchandise from major retailers, including Amazon.com. Flygrip's Amended Complaint also reflects the fact that Flygrip is currently a Texas corporation. Thus, the current accused products are distributed as follows:

|  |  | Accused Products | | | | |
|---|---|---|---|---|---|---|
|  |  | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
|  |  | Colorado | Colorado | NY | NY | NY |
| -1080 case | Five Below |  |  | x | x | x |
| -1081 case | Amazon | X | x | x |  |  |
| | CFE | X |  |  |  |  |
| | ATX | X | x |  |  |  |
| -1082 case | Walmart | X | x | x | x |  |

## B. Locations of the Parties

Amazon is a Delaware corporation that is headquartered in the state of Washington. Mot. 2. As explained in more detail below, Amazon's connections to WDTX are much stronger than its connections to DCO. Flygrip is a Texas corporation with an address in Austin, Texas. Ex. 8. CFE is a Texas limited liability company with an address in San Antonio, Texas. Ex. 9. ATX is a Texas limited liability company with an address in Leander, Texas. Ex. 10.

### C.    The Declaratory Judgment Actions Against Flygrip

In a deliberate attempt to subvert Flygrip's choice of venue, the suppliers of two of the accused products, Otter Products, Inc. ("Otter") and PopSockets, Inc. ("PopSockets") filed declaratory judgement actions against Flygrip in Colorado seeking declarations of non-infringement (the "Colorado DJ Cases") after Flygrip filed the complaint in this case.[2]  However, Flygrip is not subject to personal jurisdiction in Colorado.[3]  Flygrip has accordingly filed motions to dismiss each of those cases.  Exs. 23 & 24.  Both of the Colorado DJ Cases have been stayed pending resolution of Flygrip's motions to dismiss.  Exs. 25 & 26.  It may be several months before Flygrip's motions to dismiss in the Colorado DJ Cases are adjudicated.  Once the Colorado DJ Cases are dismissed, no judicial resources will be conserved by transferring this case to DCO.

## III.    LEGAL STANDARDS

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-CV-00080-ADA, 2021 WL 1535414, at *1 (W.D. Tex. Apr. 16, 2021). "[W]hen deciding a section 1404 motion to transfer, the Court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'" *Ikorongo Texas LLC v. Uber Techs., Inc.*, No. 6:20-cv-843-ADA, 2021 WL 2143740, at *3 (W.D. Tex. May 26, 2021). "The burden to prove that a case should be transferred for convenience falls squarely on the moving party." *EcoFactor*, 2021 WL 1535414, at *2. "The burden that a movant

---

[2] *See PopSockets LLC v. Flygrip, Inc.*, No. 1:21-cv-02900, ECF No. 1 (D. Col., filed Oct. 28, 2021) and *Otter Products LLC v. Flygip, Inc.*, No. 1:21-cv-03298, ECF No. 1 (D. Col., filed Dec. 8, 2021).
[3] Flygrip also moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. Flygrip alternatively moved to have the Colorado DJ Cases transferred to WDTX.  These motions remain pending.

must carry is not that the alternative venue is more convenient, but that it is clearly more convenient." *Id.*[4]

## IV.    THIS CASE SHOULD NOT BE TRANSFERRED

### A.    This Case Could Not Have Been Brought in Colorado

To evaluate transfer under Section 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").  Here, Flygrip's Amended Complaint has replaced the Original Complaint and has effect upon the filing date of this action.[5]  Flygrip's Amended Complaint includes the CFE and ATX defendants.[6]  CFE and ATX reside in WDTX and have no known presence in Colorado.  Under 28 U.S.C. § 1400(b), venue as to CFE and ATX is not proper in Colorado, and therefore this case could not have been brought in Colorado.

### B.    This Case Should Not be Transferred to Colorado

This case should not be transferred under 28 U.S.C. § 1404(a) because Amazon has not and cannot show that Colorado is a clearly more convenient venue.  Thus, the heavy burden analysis applies, and Amazon has not met it. Because Amazon has little connection to Colorado and hides its strong connection to WDTX, Amazon's Motion relies heavily on the location of the manufacturers of two of the accused products, namely PopSockets and Otter.

---

[4] All emphasis is added unless otherwise noted.

[5] To the extent that Amazon may argue in its Reply that the joined co-defendants should not be considered, Flygrip notes that this Court has explained that post-complaint facts may be considered as part of the convenience analysis.  *Unification Technologies LLC v. Micron Technology, Inc.*, No. 6:20-cv-500-ADA, 2022 WL 92809, at *3 (W.D. Tex. Jan. 10, 2022) (finding that "[t]he *Hoffman* opinion held that courts must judge the transferee forum's personal jurisdiction without reference to post-complaint facts; it did not bar those facts from the convenience analysis) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)).  Here, **CFE and ATX were joined as co-defendants prior to filing of the currently-pending motion to transfer**.

[6] Under Rule 15(c)(1)(B), Flygrip's Amended Complaint relates back to the filing date of its Original Complaint.

Amazon makes much of the location of PopSockets and Otter. However, in analyzing the importance of the location of these two suppliers, the Court should *ab initio* determine the likely necessity in this case of witnesses in the employ of these two suppliers. This is not a case that will turn on source code analysis, specialized software or any technological expertise. The accused products are issue are phone grips--simple mechanical devices that can be analyzed and observed without the assistance of any specialized expertise. Amazon does not establish what testimony would likely or actually be required from any supplier of the accused products. Exemplary photos of the accused products are shown below:

  

### C.    The Private Interest Factors Weigh Against Transfer

#### 1.    The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *EcoFactor*, 2021 WL 1535414, at *2. "[T]he question is relative ease of access, not absolute access." *Id.* (emphasis in original). To properly consider this factor, a movant must describe with specificity the evidentiary problems it will face if the case is not transferred.[7]

---

[7] *See SITO Mobile R&D IP v. Hulu, LLC*, No. 6:20-cv-472-ADA, 2021 WL 1166772, at *3 (W.D. Tex. Mar. 24, 2021); *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-108-ADA, 2021 WL 401989, at *2 (W.D. Tex. Jan. 26, 2021); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

As for Amazon's documents, Amazon concedes that "[a]ny relevant documents Amazon would have would be those relating to the contracts for the accused products and financial results for sales through the Amazon website. Mot. 7. Amazon also concedes that such documents are not located in WDTX or DCO and are therefore not relevant to the transfer analysis. Mot. 7-8. The fact that Amazon's documents are stored on servers that are accessible from both forums does not support a finding that DCO is more convenient than Waco. *See Broadband iTV, Inc. v. DISH Network L.L.C.*, No. 6:19-cv-716-ADA, 2021 WL 1566455, at *3 (W.D. Tex. Apr. 20, 2021).

Amazon's arguments involving the locations of documents from two of its suppliers miss the mark. Amazon argues that "documents regarding the development, manufacturing, and marketing of the accused products will come from the four manufacturers". Mot. 7. However, Amazon does not explain why or how such documents would aid the ultimate fact-finder or for what purposes they might – or even could – be introduced at trial. None of the asserted claims involve method-of-manufacture or product-by-process claims. The asserted claims relate to the use of a simple mechanical device as a phone grip. As to the issue of infringement, the fact-finder will be called upon to compare the accused products to the claim language and can readily do so. *See* ECF Nos. 22-2. 22-3, and 22-4. The case cited by Amazon to support its argument that the manufacturer documents were relevant involved far more complicated technology—wireless headphones. Mot. 6 (citing *Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *2–3 (W.D. Tex. May 20, 2021)).[8] In sum, Amazon fails to identify any specific documents – or even broad categories of documents -- that will be relevant to this litigation that are located in Colorado, much less any proof of actual location, as opposed to hypothesis.

---

[8] In addition, it is not clear that the Court gave significant weight to the location of third-party documents. The Court stated: "Poly's showing that additional, third-party documents—Apple's documents—are located in NDCA further tips the scales in favor of transfer."

Further, even assuming *arguendo* that supplier documents were at issue in the pending litigation, Amazon has not established that Otter and PopSockets constitute two independent sources of documents. Indeed, PopSockets provides the grips to Otter, which adds the grips onto Otter cases. Thus, any even arguably helpful technical information regarding the grips would be limited to PopSockets. Countervailing this, any such information for the SpinPop products supplied by Quest USA ("Quest") would presumably be located at Quest's location in New York. The Nite Ize products are no longer in the case. Thus, the bulk of such are not located in Colorado, even if such documents were somehow relevant. There would be (perhaps) one set of documents involving the PopGrip grips at PopSockets in Colorado, and one set of documents involving the SpinPop grips at Quest in New York.

Amazon has not alleged, let alone demonstrated, that any prior art in its preliminary invalidity contentions is located in Colorado.[9] Relevant documents from CFE and ATX involving sales of the accused products would be located in WDTX. Possibly the most important set of documents involving this case are the sales records of the accused products because the simple technology at issue does not require reference to technical documents. As to two of the three defendants, such records are located in WDTX. Accordingly, this factor weighs against transfer.

### 2. The Availability of Compulsory Process to Secure Witness Attendance

Under Rule 45(c)(1)(A), neither WDTX nor DCO may command all identified non-party witnesses to attend trial. But both courts can compel testimony by deposition. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). Given that Amazon claims to have offices where it claims non-party witnesses reside, it can hardly argue that taking these witnesses' deposition in there would impose

---

[9] As this Court has previously held, "[b]ecause prior art witnesses are very unlikely to testify, … the Court gives their location 'minimal' weight." *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987, at *4 (W.D. Tex. June 24, 2020). As such, this Court has held that "prior art witnesses do not weigh for or against transfer." *Id.*

any sort of inconvenience on its part.  *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG (E.D. Tex, Jan. 31, 2014).  Moreover, Amazon has not explained how it would be inconvenienced by presenting the non-party witnesses' deposition testimony at trial.  *See id*.

Furthermore, Amazon's arguments are unavailing for the same reasons as shown for the previous factor.  First, Amazon does not explain why witness testimony from its suppliers would be necessary or even likely.  *Defense Distributed; Second Amendment Found., Inc. v. Bruck*, No. 21-50327 (5th Cir. Apr. 1, 2022) ("Neither the NJAG nor the district court identified any witness who is subject to compulsory process in New Jersey but not in Texas. Yet the court inexplicably weighed this factor not as neutral but in favor of transfer. "To show good cause[, however] means that a moving party . . . clearly demonstrates" the appropriateness of transfer. Where there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer."); *Adaptix, Inc. v. Cellco Partnerhsip*, No. 6:15-cv-45, Dkt. No. 32 at 7 (E.D. Tex. Aug. 12, 2015) (holding litigants should not only identify potential witnesses but also identify the relevance and materiality of the information such witnesses would provide).

Second, even if the suppliers were involved, there would be at most one in Colorado and one in New York.  Moreover, Amazon cannot credibly argue that it would need to exercise compulsory process over its suppliers.  After all, the suppliers are responsible for indemnifying Amazon and have voluntarily undertaken shadow litigation in Colorado.  Clearly, the suppliers are at least as motivated to obtain a favorable outcome as Amazon.[10]

---

[10] The agreement between Amazon and its suppliers/sellers (the "Amazon Services Business Solutions Agreement") requires that Amazon's suppliers/sellers "will defend, indemnify, and hold harmless Amazon … against any third-party claim … (including, without limitation, attorneys' fees) … arising from or related to … Your Products, including the … alleged infringement of any Intellectual Property Rights … ."  Ex. 22.

This Court can more likely compel testimony from unwilling witnesses involving WDTX-based CFE and ATX. Further, the Court should give no weight to Amazon's thin reasons for transfer based on the supposed need for compulsory process. Moreover, lists of potential third-party witnesses do not affect the Court's analysis for this factor. *See Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020).

Finally, Amazon states that some witnesses, including employees of Quest, are located in New York. Therefore, neither WDTX nor DCO would have subpoena power over such witnesses.

Accordingly, this factor is neutral.

### 3.    Cost of Attendance for Willing Witnesses Does Not Favor Transfer

"The convenience of witnesses is the single most important factor in the transfer analysis." "The Court should consider all potential material and relevant witnesses." *Id.* However, the "convenience of party witnesses is given little weight." *Hammond Development International, Inc. v. Amazon.com, Inc.*, No. 6:19- cv-355-ADA, 2020 WL 6136783, at *4 (W.D. Tex. Mar. 30, 2020) (hereinafter, "*Hammond-Amazon*"). "Importantly, the venue need not be convenient for all witnesses." *Ikorongo*, 2021 WL 2143740, at *8 (emphasis in original). In addition, courts "give more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *EcoFactor*, 2021 WL 1535414, at *4; *see also SITO Mobile*, 2021 WL 1166772, at *6.

"Given the typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in a 1404(a) briefing will testify at trial." *Fintiv, Inc. v. Apple Inc.*, 6:18-CV-00372-ADA, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019). Rather, the Court assumes only a few party witnesses and even fewer non-party witnesses (if any) will testify at trial. *Id.* Consequently, long lists of potential party and non-party witnesses do not affect the Court's analysis for this factor. *Id.*

As a threshold matter, Amazon does not identify any third-party witness who would be "willing" to testify at trial. Mot. at 9-10. In addition, while Amazon has submitted declarations from a number of its employees, Amazon has not shown that testimony from the identified employees would be helpful or even anticipated at trial. Specifically, Amazon has not explained the subject of any of their anticipated testimony.

The inventor of the patent-in-suit, Michael Karmatz, is expected to testify at trial. Mr. Karmatz attests that Waco is more convenient for his attendance. Karmatz Decl. It is a near certainty that Mr. Karmatz will testify at trial. ATX and CFE are WDTX residents, and their witnesses would likely be in or near WDTX.

Moreover, considering this Court's practice of holding short, streamlined trials, convenience considerations also favor denial of transfer. A short trial will reduce the inconvenience and time away from the office for witnesses who must attend the entire trial.

Amazon argues that the flight times from New York to Denver are slightly less than the flight times from New York to Dallas. Mot. 9-10. However, as a practical matter, New York and Dallas are airline hubs, and flights to and from these cities are much more frequent and much less expensive than flights between New York and Denver. Trial is scheduled in this case for June 22, 2023. ECF No. 17-1. Using a June 2022 trial date as a proxy, there are 16 flights per day from NYC to Denver while there are 33 flights per day from NYC to Dallas. *See* Exs. 13 & 14. Accordingly, flights from NYC to Dallas are much less expensive than NYC to Denver. *See* Exs. 11 & 12.

Finally, non-party witnesses, including those identified by Amazon, who do not reside in either district, and will be required to travel in any case. Given the realities of trial, such witnesses will certainly incur travel expenses. Those expenses as related to both meals and lodging will be

unarguably and substantially higher in Denver than Waco.[11]  *See Realtime Adaptive Streaming LLC v. Amazon.com, In*c., No. 6:17-cv-00549-JRG, 2018 WL 4444097, at *6 (E.D. Tex. Sept. 5, 2018) ("[T]he Court notes airfare is only one factor in the cost of attendance: lodging and meals are likely to be significantly less expensive in Tyler than in Seattle.")

Accordingly, this factor weighs against transfer.

### 4.    The Practical Problems Factor Does Not Favor Transfer

The presence of "co-pending litigation before the trial court involving the same patent and underlying technology, provides a substantial justification" for denying transfer.  *In re Vistaprint Ltd*., 628 F.3d 1342, 1346 (Fed. Cir. 2010) (applying Fifth Circuit law). Stated another way, "[a] parallel action in this District involving the same patent weighs heavily in the transfer analysis." *NCS Multistage v. Nine Energy Serv., Inc*., No. 6:20-cv-277-ADA, 2021 WL 1199623, at *3 (W.D. Tex. Mar. 30, 2021).

Judicial economy weighs strongly against transfer.  As shown in the table below, each of the accused products in this case are also accused products in the *Walmart* case pending here.  In addition, the accused Quest SpinPop product is also accused in the *Five Below* case pending here.  Further, the '024 patent currently asserted here is also asserted against *Walmart* and *Five Below*.

For the same reasons as those involving judicial economy, the avoidance of inconsistent judgments also counsels against transferring this case.  If this case were transferred, overlapping claims would be proceeding in two different federal courts.  Transfer could readily result in inconsistent judgments regarding infringement of the PopSockets and Otter products (which would be at issue in both the Amazon and Walmart cases) and the Quest products (which would be at

---

[11]  The per-diem rate for June 2022 in Denver for lodging is $199 and for meals & incidentals is $79, for a total of $278.  Exs. 15 and 16.  The per-diem rate for June 2022 in Waco for lodging is $107 and for meals & incidentals is $64, for a total of $171 – rendering Denver **more than 62% more expensive** than Waco in this regard.  Exs. 17 and 18.

issue in the Amazon and Five Below cases).  A summary of the asserted claims involving U.S.

Patent No. 10,800,024 is shown in the table below, demonstrating that claims 2, 4, 6, and 8 are at

issue in all three cases:

| | | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
|---|---|---|---|---|---|---|
| | | Colorado | Colorado | NY | NY | NY |
| -1080 case[12] | Five Below | | | 2, 4, 6, 8 | N/A | N/A |
| -1081 case[13] | Amazon | 2, 8 | 2 | 2, 4, 6, 8 | | |
| | CFE | 2, 8 | | | | |
| | ATX | 2, 8 | 2 | | | |
| -1082 case[14] | Walmart | 2 | 2 | 2, 4, 6, 8 | N/A | |

Amazon also argues that "transfer of this action to Colorado would not multiply the number

addressing the same patents and accused products because the DCO already has the two DJ [sic]

addressing the same patent and nearly all of the accused products at issue here."  Mot. 10.  First,

Flygrip is not subject to personal jurisdiction in Colorado and has moved to dismiss the Colorado

DJ Cases.  When the Colorado DJ Cases are dismissed, there would be nothing overlapping in

DCO.  In addition, the Colorado DJ Case do not include the issue of invalidity – only the issue of

infringement.  Therefore, the presently-pending cases here address more issues.  Transferring this

case to Colorado accordingly also creates a risk of inconsistent findings as to invalidity.

Furthermore, there are only two products at issue in the Colorado DJ Cases: the PopSockets

and Otter products.  Transferring this case would also transfer the claims of infringement involving

the Quest products, which are also accused in the *Walmart* and *Five Below* cases here.  This would

additionally add to the already substantial risk of inconsistent outcomes.

---

[12] For the *Five Below* case, *see* Dkts. 1-3, 1-4, 1-5 in that case.
[13] *See* ECF No. 22-2, depicting infringement of claim 2 of U.S. Patent No. 10,800,024 involving the Otter products.  *See* ECF No. 22-3, depicting infringement of claims 2 and 8 of U.S. Patent No. 10,800,024 involving the PopSockets products.  *See* ECF No. 22-4, depicting infringement of claims 2, 4, 6, and 8 of U.S. Patent No. 10,800,024 involving the Quest SpinPop products.
[14] For the *Walmart* case, *see* ECF Nos. 1-3, 1-4, 1-5 in that case

Moreover, the WDTX cases were first-filed.  Thus, the WDTX cases should take precedence.  Furthermore, the customer-suit-exception doctrine does not apply at least because (1) Amazon has not agreed to be bound by the judgments in the Colorado DJ Cases; and (2) the products at issue in the Colorado DJ Cases do not include the Quest products.

> The Federal Circuit has emphasized that 'judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice.' *In re Google, Inc*., 412 F. App'x 295 (Fed. Cir. 2011) (citing *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960)). '[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.' *In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). To 'permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.' Id. (quoting *Cont'l Grain*, 364 U.S. at 26).

*Salazar v. AT&T Mobility LLC*, 2020 WL 6797025, *2 (E.D. Tex. 2020).  Accordingly, this factor weighs strongly against transfer.

### D.    The Public Interest Factors Weigh Against Transfer

#### 1.    Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums."  *ParkerVision*, 2021 WL 401989, at *6.  "The relevant inquiry under this factor is actually '[t]he speed with which a case can come to trial and be resolved[.]'"  *Id*.

Amazon concedes that the civil median time to trial 25.1 is months in WDTX and 27.3 months in DCO, and that the civil cases per district judge is 215 cases (3882 / 18) in WDTX and 247 cases (3215 / 13) in DCO.  Mot. 11-12.  The numbers reported by Amazon weigh against transfer and also do not reflect the recent addition of Judge Gilliland, the new WDTX magistrate judge who will undoubtedly increase the speed of the Court's patent-related docket.  *See* Ex. 19.  Also, it is highly likely that DCO faces a greater Covid-related backlog because it suspended trials more that this Court.  Furthermore, in this case, there is a scheduled trial setting of June 22, 2023, barely more than a year away.  ECF No. 17-1.

Another concern with transfer is the potential for significant delay to the parties in getting back on schedule for a trial date in the transferee district. Motions to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute. It is unlikely – if not impossible – that a court in DCO will be able to receive this case (if transferred), set a scheduling conference, and provide the parties with *Markman* and jury selection dates anywhere close to those already established in WDTX. Accordingly, this factor weighs strongly against transfer.

### 2.    Local Interest in Having Localized Interests Decided at Home

"Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home." *Broadband iTV*, 2021 WL 1566455, at *6. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Id*. In its Amended Complaint, Flygrip specifically pleaded infringement of its patent in this District and in this state. ECF No. 22, ¶¶ 7-11. The fact that CFE and ATX are domiciled in this District strongly weighs against transfer. Amazon's dominant presence in this District also strongly weighs against transfer. *Vocalife, LLC v. Amazon.com, Inc*., No. 2:19-CV-00123-JRG (E.D. Tex. Nov. 27, 2019) ("this Court has previously rejected Amazon's argument that its presence in this District does not give rise to a local interest. Amazon does not dispute that it has facilities in this District and avails itself of the laws and protections provided by this District.")

Amazon's growth in the District has been exponential after opening its doors in Austin in 2015 and employing more than 1,200 people in Domain 7 and 8 towers in Austin, leasing almost half of Domain 10 tower, a 15-story high rise. Ex. 4. After receiving $23 million dollars in tax breaks in 2014-2016, Amazon constructed three giant fulfillment centers in Texas, two in WDTX. Ex. 1. The first warehouse is an 855,000 square-foot building in Hays County that was built in exchange for $11 million in tax incentives and employs between 1,500 and 2,000

employees, depending on the season. Ex. 5. The second warehouse is a 1.26 million square-foot building in Guadalupe County, which also happens to be the largest Amazon warehouse in the United States, and was built in exchange for $7.6 million in tax incentives, creating 350 new jobs. Exs. 2, 6. Amazon also has a "sortation center" in San Antonio (Bexar County). Exs. 3 & 7. In total, there are 36 fulfillment and sortation centers in Texas compared with only 4 in Colorado. *Compare* Ex. 20 *with* Ex. 21. These warehouses and distribution centers in WDTX sell Amazon's accused products. Thus, Amazon likely sold many more of the accused products in WDTX than Colorado. Finally, Amazon is infringing the patent of a Texas corporation. The residents of Texas have a legitimate local interest in the enforcement of patents owned by a resident business. Therefore, this factor strongly weighs against transfer.

### 3.    Familiarity of the Forum with the Law That will Govern the Case

The governing law in this case is federal patent law. This Court is intimately familiar with patent law and is handling far more patent cases than DCO. As such, this Court is at least as familiar, if not more familiar, with the primary body of governing law than DCO and, therefore, this factor either weighs slightly against transfer or is neutral.

### 4.    Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Flygrip agrees with Amazon that this factor is neutral. Mot. 15.

## V.    THIS CASE SHOULD NOT BE STAYED

### A.    The Factors Do Not Support a Stay

Amazon is tellingly ambiguous as to the parameters of its requested stay. Amazon vaguely seems to ask for a stay pending final judgment in the Colorado DJ Cases, which likely would require years after those cases are re-started, if they are ever re-started instead of being dismissed.

### 1. Staying This Action Will Prejudice Flygrip

Here, a stay would prejudice Flygrip, forcing it to engage in inefficient and significantly more costly, piecemeal litigation.  As explained above, Amazon asks that this case be stayed pending two declaratory judgment actions (which are presently stayed) in Colorado, which only address two of the three accused products in this case.  A stay would also needlessly delay obtaining discovery, which could cause loss of evidence and delay in recoveries.  Further, there is substantial judicial economy to be gained by moving forward with all three of the accused products at the same time.  A stay could also lead to the possibility in inconsistent judgments involving sales of the same products.

### 2. Staying This Action Will Not Simplify the Issues

Similarly, a stay would not simplify the issues, but would instead complicate the issues because the asserted claims would then need to be construed by two different courts.[15]  Also, sales involving different accused products would need to be adjudicated in different phases.  And, as explained above, adjudication of claims of infringement involving the suppliers of just two of the accused products would not necessarily and definitively resolve all claims involving Amazon.

Amazon also omits mention that this Court will be construing the claims of the asserted patents (regardless of transfer) in the *Five Below* case, which was filed on the same day as this case and is on a parallel litigation schedule.

Amazon argues that the stayed Colorado DJ Cases were filed in a location near suppliers of two of the accused products.  However, in analyzing the importance of the location of these two suppliers, Amazon has not established – or even argued - the necessity of trial witnesses in the employ of these two suppliers.  Amazon does not explain why this case, which was first-filed,

---

[15] Claim construction briefing began before Amazon filed its Motion, and continues apace now.

should not proceed first, or why Flygrip would be precluded from making a subsequent claim against an "upstream" seller if Flygrip prevailed against Amazon.

### 3.    The Stage of This Action Does Not Favor a Stay

Discovery in this case is expected to begin on June 24, 2022.  ECF No. 17-1.  Further, the parties have a presumptive trial date of June 22, 2023.  ECF No. 17-1.  A stay would require these dates to move substantially.

Because none of the factors weigh in favor of a stay, and at least because the first two factors weigh heavily against a stay, the Court should not stay any aspect of this case.

### B.    The Customer Suit Exception Doctrine Does Not Apply

"When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).  Here, there are different cases filed in different federal district courts, three for infringement and two for declaratory relief, and the declaratory judgment actions were filed later.  Accordingly, if any cases should be stayed, the Colorado DJ Cases should be stayed pending the outcome of this case.  Indeed, the Colorado DJ Cases are currently stayed pending the outcome of Flygrip's motions to dismiss there.

While there is concededly a "customer suit" exception to the general rule that favors the forum of the first-filed action, this limited exception does not apply to Colorado DJ Cases. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Courts consider the following three factors to determine applicability of the customer suit exception: "(1) whether the customers are merely resellers; (2) whether the customers agree to be bound by any decision in the manufacturer's case; and (3) whether the manufacturer is the sole

source of infringing products." *Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, No. 12-088-RGA, 2012 WL 2803695, at *3 (D. Del. Jul. 10, 2012) (citing *Tegic Commc'n Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)).

Here, the customer suit exception should not apply in light of consideration of the factors. First, and critically, while Amazon argues that it has vaguely "agrees to be bound by the outcomes of the Colorado DJ actions", the issue of invalidity is not part of the Colorado DJ Cases. Thus, even after potential resolution of the infringement issues, the invalidity issues raised by Amazon in its defenses would still need to be adjudicated by this Court. Amazon has not offered to waive or withdraw those.

Second, the Colorado DJ Case plaintiffs are not the sole sources of infringing products. Indeed, one of the three products at issue in the Amazon case is from a supplier based in New York, specifically, Quest. Furthermore, infringement of the Quest products will be adjudicated by this Court in the *Five Below* case. As also shown above, a summary of the products accused in the WDTX cases is as follows:

|  |  | Accused Products | | | | |
|---|---|---|---|---|---|---|
|  |  | Popsockets PopGrip | Otter Popsocket Otterbox | Quest SpinPop | Merkury Grip'z | Bytech SideKick |
|  |  | Colorado | Colorado | NY[16] | NY[17] | NY |
| -1080 case | Five Below |  |  | x | x | x |
| -1081 case | Amazon | X | x | x |  |  |
|  | CFE | X |  |  |  |  |
|  | ATX | X | x |  |  |  |
| -1082 case | Walmart | X | x | x | x |  |

---

[16] Quest USA Corp. is a New York corporation. Ex. 2.
[17] Merkury Innovations LLC is a New York limited liability company. Ex. 3.

Further, as explained above, the Texas lawsuits will implicate the validity of the Flygrip patents that have been asserted there.  The Colorado DJ Cases do not involve any claims for patent invalidity in the declaratory judgment complaints.

"[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy".  *Tegic*, 458 F.3d at 1343.  Amazon does not and cannot establish that it would be more efficient to enable the Colorado DJ Cases to proceed first.  It would be much more efficient to stay the Colorado DJ Cases in favor of the Texas lawsuits.  *See Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990) (in evaluating the customer suit exception "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other").

Accordingly, the customer suit exception does not apply here, and the first-to-file rule should be followed.  Flygrip has asked the Colorado courts to stay, dismiss, or transfer (under 28 U.S.C. § 1631[18]) the Colorado DJ cases to WDTX, which has jurisdiction over Flygrip because Flygrip has already availed itself of WDTX as a forum for litigation.

## VI.    CONCLUSION AND PRAYER

WHEREFORE, Flygrip respectfully requests that the Court deny Amazon's motion in its entirety and to grant Flygrip any further relief to which it may show itself justly entitled.

---

[18] Once a court determines it lacks jurisdiction, section 1631 empowers the court to decide "whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court . . . that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (quoting 28 U.S.C. § 1631).

DATED: May 4, 2022                         Respectfully submitted,

                                           /s/ *Robert D. Katz*
                                           Karl Rupp
                                           Texas State Bar No. 24035243
                                           SOREY & GILLILAND, LLP
                                           100 N. 6th Street, Suite 502
                                           Waco, Texas 76701
                                           903.230.5600 (Telephone)
                                           903.230.5656 (Facsimile)
                                           krupp@soreylaw.com

                                           Robert D. Katz
                                           Texas Bar No. 24057936
                                           KATZ PLLC
                                           6060 N. Central Expressway, Suite 560
                                           Dallas, TX 75206
                                           214.865.8000 (Telephone)
                                           888.231.5775 (Facsimile)
                                           rkatz@katzfirm.com

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **FLYGRIP, INC.**