IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FLYGRIP, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 6:21-cv-01081-ADA |
| | § | |
| AMAZON.COM, INC., COGHLAN | § | **JURY TRIAL DEMANDED** |
| FAMILY ENTERPRISES LLC, and ATX | § | |
| OVERSTOCK LLC | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANT AMAZON.COM, INC.'S REPLY IN
SUPPORT OF ITS REVISED MOTION TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(a) OR, ALTERNATIVELY, TO STAY**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................ 1

II.   COLORADO IS THE CLEARLY MORE CONVENIENT FORUM .............................. 1

      A.    The case against Amazon could have been filed in Colorado ............................... 1

      B.    Sources of proof exist in Colorado, but not in Texas ............................................. 2

      C.    Many witnesses are subject to compulsory process in Colorado, none in Texas ... 4

      D.    Colorado is more convenient for more willing witnesses than Texas. .................. 4

      E.    Judicial economy favors transfer ......................................................................... 5

      F.    Court congestion is neutral ................................................................................... 6

      G.    Local interest heavily favors transfer ................................................................... 6

III.  ALTERNATIVELY, THE COURT SHOULD STAY THIS CASE ................................. 9

      A.    All general stay factors support a stay ................................................................. 9

      B.    The customer suit exception applies .................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

Pages(s)

**Cases**

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
125 F.3d 1448 (Fed. Cir. 1997).................................................................................................. 3

*In re Apple Inc.*,
374 F. App'x 997 (Fed. Cir. 2010) ............................................................................................ 7

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)............................................................................................. 6, 8

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ................................................... 8

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ................................................... 8

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)..................................................... 5

*In re EMC Corp.*,
501 F. App'x 973 (Fed. Cir. 2013) ............................................................................................ 5

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................................... 4, 7

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021)................................................... 6, 9

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)......................................................................................... 3, 8, 9

*In re Juniper Networks, Inc.*,
No. 2021-160, 2021 WL 4343309 (Fed. Cir. Sept. 24, 2021) ................................................... 7

*In re NetScout Sys., Inc.*,
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)................................................. 5, 6

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) .................................................................................................... 6

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ................................................................................................... 7

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014)..................................................................................... 2

*In re Volkswagen of Am. Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...................................................................................... 8

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
    No. 6:20-CV-00876-ADA, 2022 WL 958384 (W.D. Tex. Mar. 25, 2022) ...................... 2, 3, 6

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)............................ 5

*Proven Networks, LLC. v. Netapp, Inc.*,
    No. W-20-CV-00369-ADA, 2021 WL 4875404 (W.D. Tex. Oct. 19, 2021)............................ 7

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..................................................................................................... 7

**Statutes**

28 U.S.C. § 1404 .......................................................................................................... 6

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................... 3

## I.     <u>INTRODUCTION</u>

Here, a *New York*-based company sued a *Washington*-based retailer, alleging infringement based on the nationwide sale of products designed and manufactured by two *Colorado* companies (and a *New York* company). Despite having three locations with a rational relationship to the facts of the case from which to choose, Flygrip chose instead to file in this District, a place where no documents, no witnesses, and no legitimate local interest could be found. As if Flygrip's forum shopping were not clear enough from that initial choice, since filing the complaint, it has taken multiple steps "for no other purpose than to manipulate venue," as the Federal Circuit has repeatedly cautioned against. Only *after* Amazon filed its initial transfer motion, Flygrip changed its incorporation from New York to Texas and amended its complaint to sue two small local businesses who appear to have been targeted solely for their unfortunate luck of not being subject to suit in Colorado, where Amazon had already sought transfer.

Under Supreme Court and Federal Circuit law, Flygrip's attempts to manipulate venue must be rejected. All the transfer factors favor transfer (some heavily) or are neutral. Amazon respectfully requests that this case be transferred to Colorado or, alternatively, stayed under the customer-suit exception pending decision on the manufacturers' declaratory judgment actions.

## II.     <u>COLORADO IS THE CLEARLY MORE CONVENIENT FORUM</u>

### A.  <u>The case against Amazon could have been filed in Colorado</u>

Amazon does not contest that the amended complaint, with two local WDTX businesses *added by Flygrip just a month ago*, could not likely be filed in Colorado. But that is not the end of the matter. Tellingly, Flygrip does not dispute that it chose to add these two local businesses long after Amazon's initial transfer motion for the purpose of manipulating venue and trying to prevent that transfer. Nor can Flygrip dispute that the claims against these two local businesses, who Flygrip alleges to be simply a seller of accused products on the Amazon.com site and a purchaser

of accused products from Amazon (ECF No. 22 at ¶ 25), are just two of countless similarly situated local sellers and customers across the country, including in Colorado. (*See* ECF No. 28-3.)

In any event, as set forth in Amazon's motion to sever those two businesses (ECF No. 28 at 8–12), the claims against them are peripheral to those against Amazon, and court after court, including this one, have used their discretion to sever such claims that were designed to manipulate venue (*id*., at 5–8 (discussing cases).) *See, e.g., Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *7–8 (W.D. Tex. Mar. 25, 2022). The Court should do the same here, as burdening unnecessary WDTX businesses simply to block a compelling case of transfer should be discouraged.

### B.  <u>Sources of proof exist in Colorado, but not in Texas</u>

The only question for this factor involves the relative amount of documents stored in WDTX versus documents stored in Colorado. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Documents stored elsewhere are irrelevant to the inquiry. *Id*.

Amazon has established by sworn declaration numerous categories of documents that exist and are located in Colorado in the possession of two of the three manufacturers of the accused products. (ECF Nos. 14-4 at ¶ 11, 14-5 at ¶ 12.) Flygrip contends that these documents should not count because Amazon has not explained "why or how such documents would aid the ultimate fact-finder or for what purpose they might – or even could – be sued." (Opp. at 6.) The relevance– indeed the necessity–of these documents is quite obvious. These Colorado companies have engineering drawings with specifications that describe the accused products, in mechanical-engineering detail, which would be relevant to, for example indications of whether the alleged "plurality of graduated sections" are "more flexible between the sections," whether they "flex and/or fold over and into one-another," and whether "the apparatus in the collapsed position lies flat to the handheld device," all claim terms of Flygrip's asserted patent. They also have marketing

documents evidencing the relative value of various features of the accused products. PopSockets also has evidence that the accused products predate Flygrip's priority date, which provides a complete defense to patent infringement. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1450–51 (Fed. Cir. 1997). All of this is highly relevant, and all is in Colorado.

In contrast, Flygrip does not deny that for its claims against Amazon, there are absolutely no sources of proof in WDTX.[1] Despite its re-incorporation from New York to Texas in late March 2022, months after Amazon filed its initial transfer motion, Flygrip does not claim to have any documents in Texas nor to have moved operations to Texas.[2] Regardless, the Federal Circuit would not permit counting of documents moved into the venue just before suit, much less well into the case to manipulate venue. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Flygrip's astounding claim that "the sales records of the accused products" for the two newly added small local businesses, CFE and ATX, are "[p]ossibly the most important set of documents involving this case" (Opp. at 7) fails on both the facts and the law. First, because the two were added only "after [Amazon] filed its motion to transfer," the Court should "accord[] their presence little to no weight in the transfer analysis." *Monolithic*, 2022 WL 958384, at \*8. Second, Amazon has also sought to sever those local businesses, such that their records would be irrelevant to the case against Amazon. Third, even if the small business sales records were relevant, Flygrip alleges that they are accused because one sells the accused products on the Amazon.com site and one is an Amazon customer. Amazon itself has sales records for its own sales to its customers and of third-party sales on the site, so the two local businesses' own records showing their sales on the

---

[1] In a venue discovery response, Flygrip confirmed it was aware of no sources of proof in the WDTX. (ECF No. 30-2 at Resp. to Interrog. No. 2).) Had Flygrip discovered some, it surely would have updated the response as required by Fed. R. Civ. P. 26(e), but it has never done so.

[2] In its motion, Amazon mistakenly referred to Flygrip as a New York corporation, citing the complaint. Amazon apologizes to the Court for this inadvertent error, as its counsel failed to notice the change made in the amended complaint.

Amazon.com website or their purchases from Amazon would be redundant. With zero sources of proof in WDTX and plenty in Colorado, this factor weighs heavily in favor of transfer.

### C.  **Many witnesses are subject to compulsory process in Colorado, none in Texas**

As with sources of proof, this factor is as lopsided as it could be towards transfer. Flygrip identifies not a single witness subject to compulsory process for trial in this District. (ECF No. 30-2 at Resp. to Interrog. No. 1; Opp. at 7–9.) It speculates that there could be "unwilling witnesses involving WDTX-based CFE and ATX" but fails to identify anyone.

In contrast, Amazon provided sworn declarations identifying 14 specific individuals in Colorado subject to service of process for trial there, including the subject matter of their knowledge. (ECF Nos. 14-5 at ¶¶ 6–7, 14-4 at ¶¶ 6–7.) Far from being a laundry list of names, as Flygrip contends (Opp. at 9), these declarations identify specific individuals and the relevant knowledge of each. As with the Colorado companies' documents (see above at 2–4), these witnesses are unquestionably important to issues in this case, including prior invention of the accused product, non-infringement of the accused product, and marketing of the accused product relevant to damages (e.g., numerous *Georgia-Pacific* factors and apportionment). With zero identified WDTX witnesses and at least 14 Colorado witnesses, this factor heavily favors transfer.

### D.  **Colorado is more convenient for more willing witnesses than Texas.**

This factor also weighs in favor of transfer. If the Court considers travel time, travel to Denver on average involves less time—albeit slightly—than travel to Waco for party witnesses.[3]

---

[3] Flygrip argues that Waco is more convenient for New York witnesses (who it fails to name, other than Mr. Karmatz) because New York and Dallas are airline hubs and because there are 33 daily flights between New York and Dallas versus 16 between New York and Denver. (Opp. at 10.) Flygrip ignores that Denver is also a major hub (https://www.united.com/ual/en/us/fly/travel/airport/maps.html) and that witnesses heading to Dallas still need to get to Waco, which requires either a second flight or a lengthy automobile ride, both of which increase the time and cost required for such a trip. *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). Finally, Flygrip cites no authority suggesting that more flights per day should count for convenience, much less when *both* city-pairs have at least 16 per day.

Looking beyond just travel time, sworn declarations establish that Denver is far more convenient for Amazon's seven named witnesses than Waco, and the declarations explain why. (ECF Nos. 14-1 at ¶ 6, 14-2 at ¶ 6, 14-3 at ¶ 6.) In contrast, Flygrip identifies just one single witness, Mr. Karmatz, who lives in New York and Florida, far from both districts. Mr. Karmatz states that Waco is more convenient (ECF No. 33-1) but provides no explanation or support for his statement. In any event, the question is which district has the edge, and it is Colorado.[4]

E.  **Judicial economy favors transfer**

Judicial economy favors transfer to Colorado, where cases by PopSockets and Otter have been filed to address all their products, including those at issue here. (Mot. at 10-11.) Flygrip's analysis of this factor focuses on its cases against Walmart and Five Below. But the suit against Walmart is irrelevant because it has also moved to transfer. *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020). As for Five Below, the Federal Circuit has found multiple times that the strategy of suing multiple defendants at once does not allow a patentee to defeat a transfer motion in the name of "judicial economy." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[W]e have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor."); *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) ("any judicial economy considerations in keeping this case in Texas are insufficient to outweigh the clear benefits of transfer in light of the imbalance in the parties' respective presentations on the other private-interest and public-interest factors.").

---

[4] Flygrip contends that PopSockets and Otter are indemnifying Amazon so that their witnesses would appear without compulsion. (Opp. at 8.) If that were the case, the Court would need to weigh the clear convenience of Colorado for yet another 14 witnesses in this factor.

Flygrip also cannot rely on its own recent choice to add two small local businesses to this case to influence the judicial economy factor. This Court recently rejected the same argument, giving "little to no weight" to co-defendants added after a transfer motion was filed: "MPS asks this Court to weigh the presence of Meraki's co-defendants in this Court against transferring this Action under the practical problems factor. Yet district courts should not rely 'on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion.'" *Monolithic*, 2022 WL 958384, at *8 (quoting *Netscout*, 2021 WL 4771756, at *4). This factor favors transfer.

**F.  Court congestion is neutral**

The Fifth Circuit has held that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax, Ltd.*, 720 F.3d 285, 288–289 (5th Cir. 2013). The Federal Circuit follows this lead. *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021) (holding that district court erred in "establishing a new schedule with a new presiding judge would cause greater delay," instead noting the "general rule that the ordinary delay resulting from transfer is not entitled to weight").

Using the statistics for cases per judgeship and average time to trial that the Federal Circuit has endorsed for this factor, Amazon's motion demonstrated how this factor was generally neutral. (Mot. at 11–12.) Flygrip's response, which claims this factor "strongly weighs against transfer," does not provide any actual facts that undermine those statistics. Its suggestion that a "Covid-related backlog" and additional magistrate judge in Waco makes WDTX less congested not only fails to address the proper measure but also speculates without evidence. Nonetheless, it is now clear that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020). This factor is neutral.

**G.  Local interest heavily favors transfer**

As between Colorado and WDTX, the only district with a legitimate local interest in the

dispute is Colorado, where most of the accused products in this case were designed, developed, and marketed, constituting the "events forming the basis for [alleged] infringement." *Proven Networks, LLC. v. Netapp, Inc.*, No. W-20-CV-00369-ADA, 2021 WL 4875404, at *5 (W.D. Tex. Oct. 19, 2021). This suit therefore "calls into question the work and reputation of several individuals residing in" Colorado. *Hoffmann*, 587 F.3d at 1336. *See also In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (finding local interest was where *third parties* "researched, designed, and developed most of" the accused applications which defendants distributed on their phones); *Google*, 2021 WL 4427899, at *6 ("Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer.").

No such specific local interest exists in this District. Flygrip cannot rely on its recent re-incorporation in Texas—six months into this case and months after a transfer motion was filed—to manufacture a local interest that did not exist before. Indeed, the Federal Circuit has held that incorporation in the state even just *before* filing a suit in that state cannot create a local interest there. *See In re Juniper Networks, Inc.*, No. 2021-160, 2021 WL 4343309, at *5 (Fed. Cir. Sept. 24, 2021) (holding that district court should not have found local interest based on recent incorporation of plaintiff in Texas and recent creation of office in Waco); *In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir. 2010). Nor can Flygrip conjure a local interest by dragging two new local defendants into this case after transfer was initially sought. Not only has Amazon has sought to sever those two local businesses and stay the case against them, but also the Court should not sanction patent owners using local businesses as pawns to manipulate venue. *See Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964) ("[Section] 1404(a) should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts

7

or omissions, would be proper, convenient and just. The power to defeat a transfer to the convenient federal forum should derive from rights and privileges conferred by federal law and not from the deliberate conduct of a party favoring trial in an inconvenient forum."); *Hoffmann*, 587 F.3d at 1337 ("A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities [described in Van Dusen]"). Further, Flygrip accuses these two business based on allegations that they are an Amazon customer of accused products and a third-party seller of accused products on Amazon's website (ECF No. 22 at ¶ 25), but the same could be said of customers and third-party sellers in Colorado and districts all over the United States. (ECF No. 28-2 at 7, 10; ECF No. 28-3.) *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (stating that it "stretches logic" to say the local interest factor weighed against transfer because such rationale "could apply virtually to any judicial district or division in the United States.").

Finally, Flygrip invites this Court to commit legal error by relying on Amazon's alleged general investments, tax benefits, and facilities in this District as a local interest. (Opp. at 14–15.) Over and over again, the Federal Circuit has rejected any such reliance on general presence (such as employees and facilities in a district) and on ubiquitous facts (such as nationwide sales or customers).[5] Any Amazon warehouses and distribution centers in the WDTX that might ship products to customers would not be unique to this or any district; instead, the record evidence establishes that Amazon warehouses and distribution centers are all over the United States,

---

[5] *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022) (holding it was error to rely on "Apple's thousands of employees in Austin" and "the fact that advertising and sale of the accused products occurs in WDTX" because those activities are just a "general presence" and "immaterial to the local interest analysis"); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (holding it was error to rely on Apple's "over 6,000 employees in the Austin area and five retail stores located in the [d]istrict" for a local interest); *Apple*, 979 F.3d at 1345 (holding it was error to rely on "Apple's general presence in WDTX and the state and local tax benefits it purportedly received from the district" as local interest).

including in Colorado. (ECF No. 14-2 at ¶ 5; *see* https://www.aboutamazon.com/investing-in-the-u-s (listing Amazon facilities in each state).)[6] As between this District and Colorado, the only local interest, as the Federal Circuit has interpreted this factor, lies in Colorado.[7]

## III.    ALTERNATIVELY, THE COURT SHOULD STAY THIS CASE

### A.  All general stay factors support a stay

No Prejudice:  For prejudice, Flygrip speculates evidence could be lost, but fails to identify the evidence nor why it risks loss. Flygrip's concern for "inconsistent judgments involving sales of the same products," actually *favors* a stay so that the Court addressing the manufacturers' overarching action can also address the claims against Amazon involving those same products.

Simplification: Amazon's Motion (Mot. at 15 n.9) and Walmart's similar motion to stay (Case No. 6:21-cv-01082-ADA, ECF No. 20 at 4–6), citing authority, explain in detail how a stay would simplify the issues. In response, Flygrip points to the Five Below case (Opp. at 16) but provides no authority suggesting that another suit involving the same patent should dominate the stay inquiry. Flygrip also suggests that the technology in this case is too "simple" to require evidence from the companies that design and manufacture the accused products (*id.*), but as discussed above at 2–3, Amazon has shown exactly why that evidence is relevant and even vital.

Moreover, Flygrip's actions—suing several retailers instead of the manufacturers themselves, then further adding two small local businesses who (along with scores around the country) are customers or sell accused products on Amazon's website—do not suggest any interest in simplifying this litigation but instead wasting the resources of this Court and numerous

---

    [6] *See Google*, 2021 WL 4592280, at *5 (criticizing district court's reliance on "sale in the Western District of Texas of Google products that used the accused protocol" when such products were sold nationwide); *Hoffmann*, 587 F.3d at 1338 ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue.").
    [7] On the "familiarity with the law" factor, Flygrip offers no legal support for its apparent proposition that a court should rely on the number of patent cases it has heard compared to judges in the proposed district. (Opp. at 15.) Judges in both WDTX and Colorado hear patent cases, and so this factor is neutral.

defendants in attempts to manipulate venue.

<u>Early Stage</u>: The fact that no Markman hearing has occurred and discovery has not begun unquestionably supports a stay. (Mot. at 15 n.9.) Flygrip provides no authority that the *future* opening of discovery or a presumptive trial date over a year from now counsel against a stay.

**B.  <u>The customer suit exception applies</u>**

As set forth in the Motion, this case should be stayed under the well-recognized customer-suit exception to the first-to-file rule. Amazon is a mere reseller of the accused products, and it has agreed to be bound by the Colorado court's determination. Flygrip proffers no on-point cases suggesting that the customer suit-exception should not apply under these circumstances.

Instead, Flygrip's primary argument is that "the issue of invalidity is not part of the Colorado DJ Cases." (Opp. at 17–19.) But if Flygrip counterclaims for infringement in the Colorado actions, as patent holders typically do, PopSockets and Otter will be able to assert an invalidity defense. The parties plainly contest invalidity, given that PopSockets filed two petitions for *inter partes review* challenging the validity of the patent-in-suit. (ECF No. 36.) Thus, issues of invalidity can be addressed by the PTAB and/or the District of Colorado.

Flygrip's remaining argument is essentially that the customer-suit exception should not apply because (i) Flygrip has mixed allegations against different non-Texan defendants into three suits against retailers filed in this District and (ii) Flygrip excluded Colorado products from one of those cases. (Opp. at 18.) Flygrip cites no authority suggesting this strategy evades the exception, and it would defeat the purpose of the rule to reward such gamesmanship. The exception is to allow the true defendant to defend itself. Because all of the factors favor a stay, and because the customer-suit exception applies, this action (if not transferred) should be stayed.

Dated:  May 13, 2022                                    Respectfully submitted,

                                                        */s/ J. Christopher Carraway*

Darryl J. Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550
Fax: (512) 402-6865

J. Christopher Carraway (*Pro Hac Vice*)
Oregon State Bar No. 961723
chris.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone: (503) 595-5300
Fax: (503) 595-5301

*Attorneys for Defendant Amazon.com, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of May, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ *J. Christopher Carraway*</u>
J. Christopher Carraway